## No. 9348.

### WM. L. SHAFFER VS. STATE NATIONAL BANK ET ALS.

Contracts whereby servitudes are created, are designed to confer rights and impose obliga_ tions, which, otherwise, would have no existence and should be strictly construed.

In the absence of express or implied stipulations, the rights and obligations of the parties thereunder must be interpreted and regulated by the laws relative to like servitudes.

Under a contract creating a predial servitude in favor of one estate on another—both being sugar plantations—whereby the owner of the former acquires the right to use a canal or aqueduct running through the latter, so as to "*get water*" from a lake or swamp, in favor of the subjected or debtor estate, and "*conduct it*" to the favored or creditor estate,— the owner of the encumbered property has no right to obstruct the flow of the water by the erection of dams, or to divert it by excavations below the level of the bottom of the canal, unless in cases of necessity for self protection against injury which would otherwise result, or for purposes of great utility, and then only for a time and with due regard, to concurrent rights to the water

Neither can such owner, in the absence of express provision in the contract, discharge into such canal the skimmings or refuse of the sugar house on his land, where, at the date of the agreement and for years before, such refuse was bridged over said canal and disgorged across it to pursue a further course. Emptying such filth into the aqueduct would not only impede the flow of the water, but also pollute the water so as to render the use of it of not only of no advantage, but make it dangerous in supplying the boilers on the favored estate, which, in consequence of the adulteration, would be exposed to deterioration and explosion.

The owner of the creditor estate has no right to enter upon the subjected one, put up buildings and machinery, unless where it is indispensably necessary for the enjoyment of the right to get and conduct water through the aqueduct.

Courts cannot be asked to construe contracts and laws so as to meet hypothetical differences. They have enough to deal with existing wrongs without anticipating supposable evils which may never occur.

APPEAL from the Nineteenth District Court, Parish of Terrebonne. *Goode*, J.

*L. F. Suthon* for Plaintiff and Appellee.

*John B. Winder* for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The defendants appeal from a judgment which construes favorably to plaintiff a contract under which he claims a servitude of aqueduct, in other words, a right to draw water. R. C. C. 721.

The plaintiff was the owner of the undivided third of a sugar estate known as the " *Ardoyne*" plantation, which, in January, 1883, he conveyed to the defendant Bank.

The conveyance contains the following clauses, on the subject of this servitude :

"This sale and transfer is made under the express condition that the said Shaffer shall have the right to get water from the swamp in front of said Ardoyne plantation, and conduct it back to Cedar Grove plantation, it being well understood that said Ardoyne plantation shall not be put to any expense or damage for extra ditching, changing of ditches or giving other lands for that purpose; nor in any manner shall the said Ardoyne plantation be injured by giving said privilege to the said Shaffer."

"Immediately after signing the foregoing deed, it was further agreed between the parties thereto, that the owner or owners of the Cedar Grove plantation, now belonging to said Shaffer, shall have the right to use a canal now opened on and through the Ardoyne plantation, to carry water to the Bayou Chacahoula, at the upper end of Bergeron & McCollam plantation, joining the Ardoyne on the right hand descending bank ; provided said privilege does no damage to said Ardoyne plantation, by overflowing the lands, or causing any obstruction to prevent the water from running off said Ardoyne plantation, or impairing its proper drainage; the owner or owners of said Cedar Grove plantation shall at all times keep said canal open at their own expense, for the free running of the water in said canal, and for preventing any injury to the drainage of said Ardoyne plantation; and the owners of said Ardoyne plantation shall place no obstruction to prevent the water from running freely through said canal, unless it may be for the purpose of preventing damage to said Ardoyne plantation, as stipulated in the foregoing deed. One-half of the expense of keeping said canal open from the lake or swamp in front of said Ardoyne plantation, to a point on said plantation opposite the cooper shop now on the place—shall be borne by said Ardoyne plantation, and the other half of said expense, as well as the expense of keeping said canal open from the cooper shop down to the Bayou Chacahoula, shall be borne by the Cedar Grove plantation."

The plaintiff, in an elaborate petition, substantially charges that, in October following, having proceeded to exercise his rights thereunder, he found that obstacles had been thrown in his way and that, having complained, he was threatened with a suppression of his privileges.

His complaint is, that two dams were placed in the aqueduct canal; that a cross ditch running at right angles with the canal, was deepened to such an extent as to draw off the water; that the threat was made, and about to be consummated, to run the sugar-house skimmings of Ardoyne plantation into the draining canal; that, unless those impediments are removed and those menaces are prevented from being consummated, his right to draw water will be completely destroyed.

He prayed for an injunction, which was granted, and that, in due course, there be judgment recognizing his rights, and allowing him $5000 as damages.

The defense set up admits the execution of the act, under which plaintiff claims; but contests the construction put on it by him. The defendants say, that the plaintiff must enjoy his right, without inflicting any expense or injury on them or their property; that they have the right to use said draining canal for their own purposes also, and of emptying therein the skimmings of the sugar-house; that discharging the refuse otherwise would require of them extra ditchings, changing of ditches, and giving land for the purpose, and would thus impose expense on them and injury on their land; that the plaintiff has, without any authority, entered upon their lands and erected thereon works, buildings and machinery and has refused to remove the same.

The answer concludes by praying that plaintiff's demand be rejected; that he be confined to the exercise of his rights through the canal, by keeping it in order, without the erection of works or any machinery on Ardoyne plantation, or changing its drains, ditches or skimming drains; that he be ordered to remove from Ardoyne all the works, etc., by him erected, and be enjoined from using any of the lands, and from changing or interfering with the drains, skimmings or ditches, or injuring them or the drainage of Ardoyne, etc.

There was judgment in favor of plaintiff, so far as to maintain his right to the servitude reserved in the act of sale, without interference or interruption by defendants, their agents or employees. The judgment enjoins perpetually the defendants from draining the skimmings of the Ardoyne sugar-house into the canal, and from placing therein anything calculated to impair or render valueless the servitude, and from cutting or deepening any cross ditches or outlets from the canal, so as to abstract therefrom water flowing through the aqueduct to plaintiff's sugar-house on Cedar Grove plantation, reserving to the defendants the right of using the water for the purpose of soaking hoop poles and filling the sugar-house reservoirs on Ardoyne plantation.

The judgment denies to plaintiff the right of constructing the machinery on defendant's lands, at the end of the canal, to elevate the water and give an additional fall therefrom to the sugar-house on Cedar Grove plantation, reserving to plaintiff whatever rights he may have, under Article 772 and following of the R. C. C.

The appellants appear to admit that plaintiff had a right to complain of the obstruction resulting from the construction of the dams, and of the unnecessary diversion of the water through the cross ditch, but they charge that the plaintiff has made diggings which have weakened their protection levee, and have injured them and their property in various ways. They persistently claim the right to empty the skimmings in the canal, and that plaintiff has no right to enter at all upon their lands, unless to keep the canal in good order.

In his brief, defendants' counsel formally declares that, although the judge *a quo* correctly decided that the pump placed by the plaintiff on the land of defendants should be removed, yet he did not settle the question of the absolute right of plaintiff to erect works on Ardoyne, for it specially reserves to him his right. Counsel says: "We consider this the main issue in the case." We the court, however, deem that other issues are besides presented.

It is manifest that the stipulations of the parties, as well as those embodied in the act which immediately followed its execution, were designed to confer rights and to impose obligations which, otherwise, would have had no legal existence.

For a better understanding of the questions, both of fact and law, which arise in this case, it is very proper that the site of the respective estates be substantially stated.

The "*Ardoyne*" place is an extensive sugar plantation in Terrebonne parish, lying on both sides of Bayou Black, which runs north and south. On the east side of this bayou, and at about eight arpents from it, there is a lake or swamp. The cultivable part of the plantation is on the west side. The decline in level is not, as is the rule, from front to rear, but northward. Its rear (western) makes the head of Chaca_houla ridge, where it joins plaintiff's plantation known as. "Cedar Grove". Bayou Chacahoula rises in the rear of Ardoyne and takes a north-westerly direction. Bayou Black is about one and three-quarter miles distant from the last named plantation.

There exists a ditch, a leading drain, a canal, on Ardoyne, which is some two miles long, extending from the lake, apparently at right angles, in front of the sugar-house, crossing almost at right angle a ditch

known as Daunis cross-ditch, extending further towards the cultivable portion (west) where it forms an obtuse angle and extends north-west in the direction of the Cedar Grove plantation.

This ditch or leading drain is of long standing and was being used for the purposes for which it was made, at the date of the sale to the Bank and of the concession by the defendants to the plaintiff.

It is to be noticed that the concession in the act created a personal right in favor of the plaintiff, while that in the supplement which followed it, is a real right, in favor of the Cedar Grove plantation subjecting the Ardoyne plantation to the exercise of it, but under the restrictions agreed upon.

The right which has thus vested entitles the plaintiff to get water from the lake in front of Ardoyne and to conduct it back to Cedar Grove. The plaintiff has thereby acquired, for the benefit of his estate, a predial servitude, to which the Ardoyne plantation is subjected.

The acquisition of the servitude thus established, carried with it everything necessary to use it, and which is supposed to have been granted at the same time. R. C. C. 771.

This concession was granted with the understanding that the Ardoyne plantation would not be put to any expense, or damage, for extra ditching, changing of ditches, or giving other lands for that purpose, nor in any manner injured, that is, that the water was not to be allowed to accumulate in the canal so as to overflow the cultivated parts, or cause any obstruction to impair the proper drainage of the estate (Ardoyne).

It was likewise agreed that the owner of Cedar Grove would keep the canal or ditch open for the free running of water therein, at all times, and for the protection of the drainage of Ardoyne, and that the owners of this place would put no obstruction to prevent the water from thus running freely through the canal, unless for self-protection. The expense for thus keeping the canal was to be borne exclusively by the owner of Cedar Grove, except for that portion of the ditch which extends from the lake to a spot known as the cooper shop, which was to be defrayed equally by the owners of the two plantations.

The evidence shows that dams had been erected in front of the cooper's and of the blacksmith's shops, between the lake and the Daunis cross ditch, which obstructed the flow of the water in the canal. It also shows that this cross-ditch was deepened to such an extent below

the level of the canal as to draw the water off; that the plaintiff, on being asked to sign another act, which would have converted the servitude from a predial into a personal servitude, and on his refusing to do so, was threatened with a discharge of the skimmings, or refuse, or filth coming from the sugar-house, into the drain canal, or ditch or aqueduct. It also establishes that the plaintiff has entered upon the lands of defendants and erected thereon works and machinery to draw the water to his place, where there was no necessity for this entry and construction. It also proves that for some two years previous to the sale, the skimmings from the sugar-house were not discharged into the canal, but were disgorged across it by means of a trough which directed them towards Dannis cross-ditch to take some other course. The evidence does not satisfactorily show that the digging of the canal, which appears to have weakened the protection levee on Ardoyne, was done by plaintiff.

Neither does the evidence show that the plaintiff has done any act, or set up any claim which, in derogation of the rights of defendants, under the grant of the servitude, would subject their property to any damage or injury, or inflict on them any expense, or render the servitude more burdensome.

He only asks that the defendants be not allowed to obstruct by dams, deeper excavations of the ditch, diversion of the water, or otherwise, unnecessarily, the natural flow of the water in the canal, and be prohibited from polluting that water by emptying into it the refuse of their sugar-house.

The record shows that for some twenty years and perhaps more, previous to the date of the creation of the servitude, the leading drain or canal in question, on Ardoyne plantation, had been and was then in use.

By the contract between the parties, the decline in level, or fall of the bottom of the canal, was to be from the lake to Cedar Grove and to continue such indefinitely in point of time. The duty was imposed upon the plaintiff to keep it in that condition, and on the defendants that of abstaining from doing injurious acts.

By this stipulation, the rights of the parties to an artificial flow, henceforward were to be regulated, not only by their own conventions, but also by the provisions of the law, where they had not expressed themselves.

By the terms used, both in the act and in the supplement, the plaintiff had a right to get and conduct, that is, to draw water from the lake, through the canal, to his plantation, for its purposes, which were mainly the running of the sugar-house thereon.

The agreement between the parties distinctly provides, that "the owners of said Ardoyne plantation, shall place no obstruction to prevent the water from running freely through said canal, etc." This is a mere repetition of the provisions of the Code, which are to the effect that the owner of the estate which owes the servitude, can do nothing tending to diminish its use, or to make it more inconvenient. R. C. C. 655, 660, 661 and 777. The law on this subject has been judicially expounded by this Court in a number of cases, particularly in that of Ludeling vs. Stubbs, 34 Ann. 935, in which, after a review of the jurisprudence, it was declared, that dams illegally obstructing a flow of water to the prejudice of one of the contiguous proprietors or owners, was a nuisance, which the law would order to be abated. See also, 7 Ann. 291; 10 Ann. 689; 12 Ann. 554; 13 Ann. 587; 15 Ann. 497, 681; 16 Ann. 151; 33 Ann. 796; 34 Ann. 563.

In the present case, it is therefore clear that the dams complained of and which arrested the water, were illegal obstructions, and that plaintiff cannot be required to endure them, unless for a time, in cases of unavoidable necessity, of which there is no evidence in the present controversy.

The digging or excavation of the Daunis cross ditch, below the level of the leading drain or canal in question, was likewise unauthorized, as the water was diverted from it without any proved apparent justifiable purpose.

No doubt the defendants have not by the stipulations of the act and of the supplement, relinquished the right to use this cross ditch for purposes truly useful to themselves. They have, therefore, preserved it. They are entitled to exercise it, as well for supply of their sugarhouse, for proper cultivation and development of their estate, *agri colendi causa*, as for any others which need not be stated, *provided* they do not thereby unnecessarily divert the flow of the water. R. C. C. 661; C. N. 644; D. L. 39, tit. iii, § 15, or cause any permanent injury to the plaintiff, which might seriously impair the privilege they have clearly granted him of drawing water through their land. C. N. 701; Domat part 1, l. 1, tit. 12, sec. 4, n. 1; Toullier, 3 n. 533; Duranton, 5 n. 619; French Pandects, 5 p. 503, etc.

It is equally clear that under the terms of the contract and the intention of the parties, the plaintiff was given the privilege for the use and advantage of his plantation, of drawing water from the lake through the canal in question; necessarily this meant the water, as pure as it could be got from the lake, after passing through the canal, to Cedar Grove, its destination.

The act does not mention, neither does the supplement to it, that the defendants would have the right of discharging the skimmings or refuse or filth, coming from their sugar-house, into this leading drain,. ditch or canal, Things were in a certain condition at the time, which the parties knew of. As there was no stipulation for a different order 'of things, the presumption is, that their common intent was, that *the statu quo* would continue, as by the past. It is more than plausible to suppose that, had the defendants proposed to remove the trough dis-gorging the skimmings across the canal, towards the cross ditch, and to discharge them directly from the sugar-house into the canal, the plaintiff would not have assented to the change. He needed the water for the purposes of his sugar-house and of his plantation. The dis-charge of the skimmings into the canal would have had for its effect not only an obstruction, but also an adulteration, pollution of the water, which would have destroyed the advantages expected to be· derived, and made the use of the water in supplying the boilers on Cedar Grove highly dangerous.

Recognizing in the defendants the right to do such an injurious act,. would be entirely destructive of the predominant privilege to draw water for useful purposes—a conclusion which we cannot surely reach.

On the other hand, the plaintiff can use his right of servitude only according to his title, and is not at liberty to make, in either estate,. any alteration by which the condition of defendant's plantation may be made worse. R. C. C. 778; C. N. 702.

The defendants complain that, while the district judge has rejected the pretensions of plaintiff to put up the works, machinery, etc. on the Ardoyne plantation, he has made a vague reserve of rights in favor of plaintiff, under the provisions of Art R. C. C. 772 *et seq*.

The district judge was called upon to expound the law as applicable· to the issues and facts before him. He could not be asked to construe the contract so as to meet the hypothetical differences not yet arisen. Courts of justice have enough to do in dealing with real, existing· present wrongs, without anticipating and combatting supposable evils· which may or not occur. Their task is already heavy enough in ad-justing actual contests.

We think the district judge, to whose appreciations in such local matter as is presented in this controversy we attach unusual significance, did exactly what was his duty and his right, and that the defendants have no authority to appeal to us for a different course. The reserves.

·of eventual and of admitted rights which he made in his judgment in favor of both the plaintiff and the defendants, are authorized by law, prudent and wise.

We have been at some pains in understanding the pleadings and the facts, and in realizing the law and jurisprudence involved in this litigation, for which we have found no exact precedent.—not only because ·of the importance of the issues presented and which affect rural property, but also because of the earnestness and vigor with which the able counsel of the parties have pressed and submitted their respective contentions. We are satisfied that the district judge has well .grasped the matters before him and has done justice between the parties.

It is therefore ordered and decreed that the judgment appealed from ,be affirmed with costs.