## AMITE BANK & TRUST CO. v. LANIER et al.

### No. 1297.

Court of Appeal of Louisiana.
First Circuit.
March 6, 1934.

S. S. Reid, of Amite, for appellant.

Ellis & Ellis, of Amite, for appellees.

LE BLANC, Judge.

On November 2, 1927, Lee Lanier, one of the defendants, executed his ordinary note in favor of the Security Bank for the sum of $950 payable at its banking house, Amite, La., ninety days after date. The note was indorsed by F. N. Murphy, referred to in the testimony as Dr. Murphy. Amite Bank & Trust Company, the nominal plaintiff herein, acquired the note after maturity, and it was again transferred by that bank to Tangipahoa Bank & Trust Company, the real plaintiff in the suit. The demand is for judgment against the maker and indorser, in solido, for the full amount, with interest from the date of the last interest payment, as appears on the back of the note, to wit, July 15, 1929, plus 10 per cent. attorney's fees, as provided for in case the note had to be placed in the hands of an attorney at law for collection.

The defendants both plead the extinguishment of the note by novation, the novation consisting of the giving by Lanier, the maker, and the acceptance by the Security Bank, at the time it held it, of a second mortgage note in the sum of $2,500. The note having been acquired by Amite Bank & Trust Company after maturity, it is admitted that the defendants can plead all equities that they might have pleaded against the Security Bank. From a judgment in favor of the defendants which rejected the demand of the plaintiff, the latter has appealed.

Counsel for plaintiff concede that the presumption of law, to the effect that, as long as a note remains in the hands of the holder, it is unpaid, must yield in the face of proper proof, and hence the only questions we are called on to determine is whether or not the defendants have submitted satisfactory proof to rebut such presumption, and whether they have sustained their special defense of novation.

Dr. Murphy, testifying in his own behalf, says that, when he was notified by the Security Bank of the maturity of the note, he called on Mr. Garnier, the president, and told him that he had better proceed against Mr. Lanier to see if he would pay, as, if he did not, he (Dr. Murphy) had the money to take care of his indorsement now, and he might not have it later on. He says that Mr. Garnier agreed with him that that was the proper thing to do, so he told Mr. Lanier about it. That he went again to the bank to make sure that the matter was being taken care of, and Mr. Garnier then told him that Mr. Lanier had given him a mortgage note in lieu of his (Dr. Murphy's) indorsement, and told him that he "was in the clear." He states further that he was present when Mr. Lanier asked for the return of the note, and Mr. Garnier told him that it was not available, and at another time he told him that he (Lanier) had not paid any money, so they were not going to give it to him.

Mr. Lanier's testimony is to the effect that, when he gave the bank the second mortgage note for $2,500, it was with the understanding that the $950 note would be surrendered to him and canceled. That he was told at first that the note was not available at that time and he was put off from time to time and was finally told by Mr. Garnier that it looked like the second mortgage note might not be satisfactory and they would have to look into it further.

Mr. Garnier's recollection of the whole transaction is so vague that we are unable to place any value on his testimony one way or the other. In a way it may be said to favor the defendants' side of the controversy, as he finally says that Mr. Lanier's testimony is substantially correct.

Mr. Frank Patenotte, former cashier of the Security Bank, who testified for the plaintiff, says that his recollection is that the second mortgage note was given by Mr. Lanier only as additional collateral to secure Lanier's obligations at the bank, including the $950 indorsed by Dr. Murphy. It strikes us

as being a bit strange that the bank would have demanded additional collateral on this particular note just after the indorser, Dr. Murphy, had told the president that he was prepared to pay it in the event Mr. Lanier did not. When asked the direct question, however, whether he was prepared to swear that the mortgage note was given as additional security or to release the note of Mr. Lanier herein sued on, Mr. Patenotte answers that he is not in a position to do so. He refers to some interest having been paid on the note sued on after the execution of the second mortgage note, and which payments appear by way of indorsements on the back of the note. But Dr. Murphy swears positively that he never paid anything whatever on the note, and Mr. Lanier shows conclusively that the payments so indorsed were made with money applied by the bank from another fund he had on deposit, without his knowledge or consent.

We are clearly of the opinion, as was the district judge, that the defendants have successfully rebutted the presumption which arose from the fact that the note was still in the hands of the holder, and that they have carried the burden of proof which the law placed on them to show the novation of the debt sued on in the manner claimed by them, and that they were justly entitled to judgment dismissing the suit.

Judgment affirmed.