DICKSON v. ARKANSAS LOUISIANA GAS CO.

No. 5850.

Court of Appeal of Louisiana. Second Circuit.

June 28, 1939.

Rehearing Granted July 17, 1939.

Writ of Certiorari and Review Denied Nov. 26, 1939.

on the north by Stoner Avenue, east by Coty Street, south by Egan Street and on the west by the Coty sub-division. He lives thereon and has done so for several years.

On July 3, 1907, Mrs. Lucile C. Dickson et al. granted to the Shreveport Gas, Electric Light & Power Company, a servitude and right of way over said parcel of land and over land adjacent on its west side, the contents of which, so far as needful to this case, we here quote:

"The said right of way to be along a route as follows and shown in red on the attached blue print made a part hereof, to-wit:

"Commencing at a point on the East side of Gilbert Street, 135 feet South of the corner of Stoner Avenue, running thence East 660 feet, more or less, to Coty Street, on a line parallel with the center of the alley in Opo subdivision. It being specially understood that the laying of said pipe by the said Gas, E. L. & P. Co. is not to injure or damage any trees or improvements on the property of the said Grantors.

"This right of way is given to the said Company for the purpose of permitting it to construct across said land a gas main for the distribution of natural or artificial gas in supplying its consumers in the City of Shreveport, and shall be in perpetuity, provided that the said gas main so constructed by said Gas Company shall be not less than two feet below the surface of the ground and after placing said main said Company shall fill up and cover same so as to leave no holes where same is located.

"The said Company being hereby granted the right to go on said lot for the purpose of making any repairs or alterations necessary for the maintenance of said gas main and shall at all times have access to the point where said gas main is laid."

A gas main as is referred to in said instrument was laid along the route indicated therein during the year of 1907 and has since been continuously used. It forms a part of the system through which gas is supplied to defendant's patrons in that part of the city.

The rights of the original grantee under said instrument, by mesne transfers, have been transmitted to and are now owned by defendant.

In the early part of the year 1937, it was discovered that the gas main laid in 1907 on and in the vicinity of plaintiff's property had developed leaks. In order to insure a

Dickson & Denny, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, Robert Roberts, Jr., and George Conger, all of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff inherited from his mother, Mrs. Lucile C. Dickson, deceased, a parcel of land in the City of Shreveport, bounded

safe and dependable distribution of gas in that locality, defendant decided that a new main should be installed to replace the old one.

On or about April 27, 1937, the work of installing the new main progressed to the west line of plaintiff's property. A crew of workmen entered his premises while he and wife were in the City of New Orleans, excavated a ditch 150 feet long and 1½ feet wide across it, and had begun the laying of pipe when plaintiff returned. To enter said premises, it was necessary to disconnect, climb over and/or go under the fences on the west and east sides of the property. Plaintiff promptly protested to the foreman of the crew against what he conceived to be a trespass upon his property, the unjustified destruction and/or damage to his fences, flowers, trees, etc., and against the digging of an entirely new ditch, separate and independent of the old one, in which to lay the new main. He also, before completion of the work, carried his protest to the company's office in Shreveport and was assured that adequate indemnification would be made for all damages resulting from the laying of the new main.

Out of a desire to amicably adjust their differences, plaintiff wrote some letters to defendant and its attorneys, which reflect a patient, though determined, attitude towards the controversy. These were productive of no definite results. He then instituted the present suit to recover damages, etc., as follows:

1. Rebuilding fences on west side of lot ...................... $ 15.00
2. Damage to east fence ......... 5.00
3. Destruction and/or damage to flowers and plants in garden... 15.00
4. Damage to soil of garden by admixture of large quantities of clay ..................... 50.00
5. Value of right of way appropriated ..................... 300.00
6. Humiliation and worry caused by reason of the employment of "Frontier Process" in entering and trespassing on his property 500.00
   Total .................. $885.00

Defendant admits entry by its servants upon plaintiff's property for the purpose of laying the new gas main, in the manner alleged, but asserts that in doing so it only exercised a right expressly conferred in the grant of 1907 signed by plaintiff's mother.

It is alleged that plaintiff had specific notice of its intention to do this new work. Defendant denies inflicting any damages or injury to the fences, flowers, trees or soil as a consequence of laying the new gas line, and expressly avers that said new line was laid as near as possible to the old one. In all other respects the allegations of fact relied upon by plaintiff to recover are denied.

While denying any liability whatever to plaintiff, defendant avers that it has repeatedly offered to pay him $10 "for full compensation for any damages resulting" to him from the acts of which he complains; that on May 2, 1938, a real tender of said amount was made to him, together with $9.10 additional to cover accrued costs, which was rejected. These amounts, with the consent of the court, were deposited in its registry subject to plaintiff's orders.

After trial, there was judgment for plaintiff for $10, the sum tendered. In all other respects his demands were rejected. He was cast for all costs accruing subsequent to the tender. He appealed.

Defendant did not remove the old gas main after the new one was completed. It was abandoned, however. This action was prompted for two reasons, to-wit:

The expense of such removal, and to do so would have necessitated a temporary cessation of gas supply to residents of that neighborhood; therefore, the necessity of more land to accommodate the new line.

The testimony of defendant's employees who supervised the construction of the ditch for the new line, is to the effect that this line was parallel to and about one foot from the old one. The old line, at only a few places, could be seen from the ditch. The course of the old line was not straight through plaintiff's property. We are satisfied that the new one was at places considerably farther than one foot from it. Plaintiff dug a cross section near the east end of the new line, extending two feet above and four feet below it, to an adequate depth, and did not encounter the old line.

The diameters of the two mains are not shown. Presumably, they are of the same measurement. It required a ditch 1½ feet wide to accommodate the new line and it may be safely assumed that a ditch of like breadth was necessary for the old line.

The original grant of right of way permitted the laying of "a gas main for the distribution of natural or artificial gas"

through the land; not two or more mains. It required double the quantity of land for two mains than was required for one.

The language of the instrument establishing the servitude in the original grantee's favor is unambiguous. By no stretch of the imagination can it be said that the right to lay or have more than one gas main across the land was created thereby. True it is, that the width of the right of way is not specified, but this does not alter the situation. The width necessary to make an excavation adequate to receive the main originally, determined the limits of the grantee's right in that respect, under said instrument.

Burgas v. Stoutz, 174 La. 586, 141 So. 67, while not precisely in point, has some bearing upon the question.

Instruments of the character of that before us are strictly construed because rights which would not otherwise have existence are thereby created. Little or nothing should be inferred in construing or enforcing them; especially does this rule of interpretation apply when the language employed by the contractants is clear and free from ambiguity. Pertinent to this line of reasoning, it was held in Shaffer v. State National Bank et al., 37 La.Ann. 242:

"Contracts whereby servitudes are created, are designed to confer rights and impose obligations, which, otherwise, would have no existence and should be strictly construed."

We are of the opinion that defendant was without legal right to appropriate the land necessary to accommodate the new line and that plaintiff is entitled to recover its value, which is shown to be $300. He has the right, although not enjoining defendant from the unwarranted appropriation of his property, to sue for its value. Lawrence v. Morgan's L. & T. R. & S. S. Co., 39 La.Ann. 427, 2 So. 69, 4 Am.St.Rep. 265; St. Julien v. Morgan's Louisiana & T. R. Co., 35 La.Ann. 924; Hart v. City of Baton Rouge, 145 La. 173, 82 So. 79; Gumbel v. New Orleans Terminal Co. 186 La. 882, 889, 173 So. 518.

In Booth v. Louisiana Highway Comm. et al., 171 La. 1096, 133 So. 169, it was established that defendant appropriated and removed dirt from a strip ten feet wide in excess of the area embraced in right of way donated by plaintiff. Defendant was held liable for value of the extra dirt re-

moved, because it went beyond the bounds of the right of way given it.

Scott v. Ratcliff, 167 La. 237, 119 So. 33, and Marbury v. Louisiana Highway Com., La.App., 153 So. 59 also bear upon the question.

Plaintiff is positive he had no knowledge of defendant's purpose to lay the new line through his land until his return from New Orleans on April 29th. Defendant's agent testified that three or four days before the crew reached plaintiff's place, he called at his home for the purpose of giving notice of the contemplated new work, but found no one there save a colored cook. She was advised of the intention to do the work and was asked to deliver the information to plaintiff. She, evidently, did not do this. This agent also testified that on the morning the work began, he again called at plaintiff's residence and then talked to his sixteen year old son about the matter. Of course, this son could not then communicate with his father, who was in New Orleans. During the week prior to April 27, 1937, plaintiff was in the City of Shreveport. It would have been a simple matter to have contacted him after the failure to do so at his home. Had this been done, doubtless this suit would never have arisen. He was entitled to prior notice of defendant's purpose to enter upon his property to lay a new line or make extensive repairs to the old one.

Under the servitude grant by Mrs. Dickson, the grantee therein and its assigns are given the right to go upon the land "for the purpose of making any repairs or alterations necessary for the maintenance of said gas main and shall, at all times, have access to the point where said gas main is laid." The right of ingress thus provided for, it is obvious, did not carry with it expressly nor by implication, the right to enter the property by disconnecting fences to lay a new line along a route separate and independent of the old one.

Defendant's workmen gained access to the west side of plaintiff's garden by breaking down the corner post which supported a fence six feet high, consisting of a run of poultry wire above and below which were strands of barbed wire. Vines of various kinds had covered the fence and when the corner post was removed, the fence for its entire length sagged so that the vines had to be torn away and the fence

entirely rebuilt with new material. There was very little injury done the east fence. It was lifted up and the workmen passed under it.

The new ditch was dug through beds of flowers, mainly chrysanthemums, for a distance of 75 feet. The excavation and the trampling of the workmen practically destroyed these flowers. Red clay from the excavation was scattered over the surface of the ground on each side of the ditch, which affected the productivity of the soil.

It is proper here to say, in justice to defendant, that after the new line was laid and the excavation filled, it made serious efforts to restore, as far as possible, conditions as they existed prior to the entry of its workmen on the property, and to minimize the effect of the injury done by them.

All things considered, we think an award of $50.00 for the damage done to plaintiff's property, in the respects mentioned, adequate compensation therefor. He, at one time, offered to accept this amount in full settlement of his damage claim. In all other respects, we do not think plaintiff's demands for damages well founded.

For the reasons herein assigned, the judgment appealed from is amended by increasing the amount thereof to Three Hundred Fifty ($350) Dollars, with interest thereon from judicial demand, and casting defendant for all costs, and as thus amended, said judgment is affirmed.

## On Rehearing.

The application for rehearing herein assails the correctness of our opinion and decree in these respects:

1. That it was error to hold that defendant appropriated a right of way for gas main through plaintiff's land in excess of that covered by the original grant in 1907.

2. That if this position be not well founded, the value of the right of way taken, as found by this court, to-wit, $300, is not supported by the testimony.

3. That the allowance of $50 to cover general damages because of the trespass upon the property is unauthorized by the record, and, to some extent, not sued for.

Alternatively, we are asked to remand the case for further testimony on the question of plaintiff's right now to recover in any respect, since, after the case was argued and submitted here originally, he did, without reservation, sell and convey the land affected by the laying of the second gas main. A copy of the referred to act of sale is attached to the application for rehearing and remand.

Further consideration of the case leaves us convinced of the correctness of our original conclusion that defendant was without right, under the 1907 grant to its predecessor in title, to appropriate additional land and right of way to lay the new main. If this can be done once, it may be done ad infinitum for the reasons assigned to justify the present taking.

We fell into palpable error in fixing the value of the right of way appropriated by defendant. Plaintiff alleged such value to be $300, but his testimony sustains a value of only $150.

As concerns the damage allowance of $50.00, this was intended to cover not only the injury done to fences, flowers, soil, etc., but also for the unwarranted entry upon the land by defendant's crew, in order to dig the new trench to accommodate the new main.

There is no merit in the contention that plaintiff's right of action in this case abated from the sale of the land unconditionally to another. It is not contended that he intended to assign his cause of action also.

No Louisiana case on the question has been cited by either side. We have found none, after considerable search. Under the common law, it is clear, that the cause of action and the suit to enforce it would be unaffected by a simple transfer of the fee.

The right to recover the damages sued for and the value of the right of way taken, accrued personally to plaintiff, the land owner; are independent of the realty itself, and attach to and follow the then owner, regardless of its subsequent disposition by him.

Vol. 1, American Jurisprudence, § 45, page 49; R.C.Law, vol. 1, § 58, page 55, expresses the rule in such cases as follows:

"Thus consequential damages for injury to real estate accrue to the person owning the land at the time of the injury, and if, after commencing an action for such injury, he sells and conveys the land, this will not affect his right to recover."

For the reasons herein assigned, the motion to remand is denied, the money amount

of our former judgment herein is reduced to $200, and as thus reduced and amended, said judgment is reinstated and made the final decree of this court.