126 So.2d 429 (1960)
Samuel Dalton WILSON, Plaintiff-Appellant,
v.
SCURLOCK OIL COMPANY et al., Defendants-Appellees.
No. 9373.
Court of Appeal of Louisiana, Second Circuit.
December 19, 1960.
Rehearing Denied February 2, 1961.
Certiorari Denied March 20, 1961.
*431 Meadors, Shaw & Meadors, Homer, for appellant.
Robinson & Atkins, Homer, for Scurlock Oil Co.
Hargrove, Guyton, Van Hook & Hargrove, Shreveport, for Texas Eastern Transmission Corp.
AYRES, Judge.
This is an action brought by plaintiff, as the owner of a described 60-acre tract of land situated in Claiborne Parish, Louisiana, against Scurlock Oil Company and Texas Eastern Transmission Corporation, hereinafter designated, respectively, Scurlock and Texas Eastern, for (1) damages to the land occasioned by release of crude oil onto the surface thereof, (2) a declaratory judgment decreeing that Texas Eastern has exceeded its rights under a right-of-way grant to its ancestor in title, and (3) a declaratory judgment decreeing that defendant Scurlock's pipeline was operated and maintained unauthorizedly on plaintiff's land.
Following the institution of this action a limited compromise was effected between plaintiff and Texas Eastern and its liability insurer by which that defendant was released from plaintiff's claim for damages for the escape of oil. In entering into the compromise plaintiff expressly reserved his rights to proceed against Scurlock for all damages caused by the escape of the oil, as aforesaid, as well as his rights against both Scurlock and Texas Eastern for declaratory judgments.
The factual basis for this action may be briefly stated. C. D. Brown and Mrs. Stella Brown, husband and wife, at the time, owners of the aforesaid property, under *432 date of May 13, 1943, granted to the Defense Plant Corporation, ancestor in title of Texas Eastern, a right of way for the laying of an oil and gas line. Subsequently, a 20-inch gas main was laid across this land by the grantee. Thereafter, Texas Eastern acquired this right-of-way grant and pipeline by mesne conveyance. Plaintiff acquired the 60-acre tract by deed dated August 9, 1955, from W. J. Wilson, who had purchased the property from Mr. and Mrs. Brown in 1952. However, sometime before plaintiff acquired this property, but at a time not disclosed by the record, defendant Texas Eastern cleared and commenced maintaining a right of way, from 50 to 60 feet wide, centered on the 20-inch pipeline. During June and July, 1957, Texas Eastern constructed an additional 6-inch pipeline parallel to the former line which was authorized under the original right-of-way grant in consideration for which an equal amount was paid, as were damages in the sum of $59. Plaintiff was, therefore, the owner of the property when the second line was laid. During the construction of this line a bulldozer or other machinery of the agent of Texas Eastern, engaged in said construction, struck a 4-inch line of Scurlock, breaking it in two. Some two to four months thereafter, Scurlock, without having made an inspection of its line, ran a large quantity of oil through this broken line and onto plaintiff's land where it ran down a hill and collected in a branch bottom.
In answer to plaintiff's demands, defendant Scurlock denied that the oil escaped from its line through any fault or negligence on its part, and denied that it maintained its line on plaintiff's property without authority. Defendant Texas Eastern contended that it was fully authorized, under the right-of-way grant, aforesaid, to construct, operate, and maintain a pipeline across plaintiff's property and that the width used is reasonably necessary to the exercise of the rights granted to it by plaintiff's ancestors in title.
In the court below, there was judgment in favor of Texas Eastern rejecting plaintiff's demands for a declaratory judgment as against that defendant. There was judgment, however, in plaintiff's favor and against defendant Scurlock, awarding plaintiff $280 as damages for trespass by that defendant operating and maintaining a pipeline unauthorizedly and illegally across plaintiff's land.
From this judgment, plaintiff devolutively appealed. Scurlock has neither appealed nor answered plaintiff's appeal, hence no issue is presented as to the decree ordering the removal of defendant Scurlock's pipeline from plaintiff's property.
Plaintiff complains of the judgment in two respects: (1) that the district court erred in denying plaintiff's plea for a declaratory judgment limiting defendant Texas Eastern's right-of-way grant to the width necessary for excavations adequate to receive the two gas mains laid under said grant and (2) with respect to the amount of damages awarded against Scurlock and the apportionment of court costs.
The contention of the plaintiff as to the first of these complaints is that the right-of-way grant should be limited to the rights contracted for. The dispute between plaintiff and Texas Eastern relates to the width of the right of way authorized by the right-of-way grant executed by plaintiff's ancestors in title. The grant itself is silent with respect to any width; it authorized the laying of a pipeline across the land and, upon payment of a like consideration, the laying of a second pipeline parallel to the first. In addition, this right-of-way grant conferred upon the grantee, its successors and assigns, the right of ingress and egress at all times for the inspection, maintenance, repair, and replacement of such pipeline.
Plaintiff's contention is that inasmuch as the width of the right of way was not specified in the grant, the width necessary to make an excavation adequate to receive the gas line determines the limits of grantee's right in that respect. In support of this proposition is cited the case of Dickson v. Arkansas Louisiana Gas Co., La.App. 2d Cir., 1939, 193 So. 246, 249. *433 There, it was observed by this court that, where the width of a right of way for a gas main was not specified in the instrument establishing the servitude or authorizing the laying of the line, the width necessary to make an excavation adequate to receive the gas main determined the limits of grantee's right in that respect. The principle was recognized that contracts creating servitudes are designed to confer rights and impose obligations which otherwise would have no existence and which would, therefore, be strictly construed.
In the cited case, this court said:
"The language of the instrument establishing the servitude in the original grantee's favor is unambiguous. By no stretch of the imagination can it be said that the right to lay or have more than one gas main across the land was created thereby. True it is, that the width of the right of way is not specified, but this does not alter the situation. The width necessary to make an excavation adequate to receive the main originally, determined the limits of the grantee's right in that respect, under said instrument.
"Burgas v. Stoutz, 174 La. 586, 141 So. 67, while not precisely in point, has some bearing upon the question.
"Instruments of the character of that before us are strictly construed because rights which would not otherwise have existence are thereby created. Little or nothing should be inferred in construing or enforcing them; especially does this rule of interpretation apply when the language employed by the contractants is clear and free from ambiguity. Pertinent to this line of reasoning, it was held in Shaffer v. State National Bank et al., 37 La.Ann. 242:
"`Contracts whereby servitudes are created, are designed to confer rights and impose obligations, which otherwise, would have no existence and should be strictly construed.'"
The language of the grant is clear and unambiguous. It grants a right to lay a pipeline, with full rights of ingress and egress conferred upon the grantee, its successors and assigns to inspect, maintain, repair, and replace it. Similar provisions governed the laying and maintenance of a second line. Nowhere does the instrument mention that the grantee would clear a strip of land of any particular width throughout the tract and thereafter prevent the owner from the use and enjoyment of his property only subject and subordinate to the rights conferred upon the grantee. In this connection, it may be pointed out that, by the language of the grant, plaintiff's continued use of the property, subject to the aforesaid qualification, would be preserved. The grant recites that the

"Grantee agrees to bury such pipelines so that they will not interfere with the cultivation or drainage of the land, and also to pay any and all damages to stock, crops, fences, timber, and land which may be suffered from the construction, operation, renewal, alteration, inspection or maintenance of such pipelines." (Emphasis supplied.)
The laying of the pipelines is an accomplished fact. The right granted for that purpose has been exercised. However, by the grant of the right of ingress and egress, the grantee and its successors have the right to enter upon plaintiff's property for the purpose of maintaining, inspecting, repairing, and replacing said pipelines if and whenever the need or occasion arises therefor. No showing was made that any necessity had existed, or an occasion had arisen, for the defendant to enter upon plaintiff's property for any of said purposes since the execution of the grant other than for inspection. Nor was any showing made when such necessity may arise, if ever.
Considering the language of the grant, wherein no width of a right of way was specified and where an intent was evidenced that the grantors, their successors and assigns would remain in possession and enjoyment *434 of the property over which the line or lines were laid, it can only be concluded that the grantee, its successors and assigns acquired only such limited right of way with the right of ingress and egress to such lines whenever occasions arise for the inspection, repair, replacement or maintenance of such lines. Under the language used, it could not be reasonably or fairly construed it was intended that the landowners or their assigns be deprived of the use, possession, and enjoyment of their property indefinitely where no need existed for such deprivation and where it was only problematic as to whether such necessity would ever arise.
"The right-of-way requirements of a pipe-line operator are the space under the surface in which the pipe may rest, the right to bury it, and the right of access for maintenance and repairs."
24 Am.Jur., p. 621, "Gas and Oil," § 134. Such were the extent and limits encompassed in the grant herein concerned. The exercise of the rights granted shall be with as little burden on the servient estate as the nature and object of the grant will permit. It is not meant that the grantee shall have exclusive control of the right of way. The right remains in the landowner to use the land in anyway not inconsistent with the rights conferred under the grant which do not become an encroachment upon or interference with the rights conferred by the grant upon the grantee.
We, therefore, conclude that plaintiff was entitled to a declaratory judgment fixing and limiting the width of the right of way to such width as is necessary to make excavations adequate to receive the gas mains, subject, of course, to the right of ingress and egress over, on, and across plaintiff's property for the purpose of inspecting, maintaining, repairing, and replacing said pipelines as and whenever the necessity therefore arises, conditioned, of course, as provided in the grant, upon the payment of all damages as authorized in the grant.
Next, for consideration, is the question of Scurlock's liability, vel non, for the damage done to plaintiff's property by the release of crude oil thereon. Liability, if any, on the part of Scurlock exists because of its failure and neglect to properly inspect its pipeline before releasing oil therein for transportation, particularly where said line had not been used for a considerable period of time. The line was laid generally above ground. For this reason, it, no doubt, was more susceptible to damage, as well as deterioration from the elements, than if it had been laid in a ditch and covered. The record conclusively establishes that, at the time the oil was released and transported in the line, no inspection had been made to determine the condition of the line. Nor was any effort made while the oil was being pumped into the line to determine if it was reaching the point of its intended delivery.
The general rule as to the necessity and requirement as to the inspection and testing of instrumentalities one may maintain is set forth in 38 Am.Jur., p. 747, "Negligence," § 87, as follows:
"It is a corollary of the maxim `sic utere tuo ut alienum non laedas' that everyone shall investigate, inspect, and test the instrumentalities maintained by him, for the purpose of determining the possibility of perils therein. Every peril, it is safe to say, including such as are termed `latent' or `hidden,' need not be discovered, since liability for negligence in keeping a dangerous instrumentality is not absolute. If, however, common experience has demonstrated that dangers lurk in the method adopted or in the instrumentality maintained by a person, he rests under the obligation of ascertaining the peril and taking precautions to avoid injury therefrom."
The applicable rule is also expressed in "Thornton Oil and Gas," Vol. 3, p. 1095, § 790, in this language:
"It is the duty of a pipe line company to keep a careful watch over its *435 lines, to detect leaks and imperfections in them and prevent oil escaping. If it does not, its failure to do so may be such negligence on its part as will render it liable. Thus where a contractor putting in a sewer for a city, uncovered a section of an oil pipe line that was empty, and in blasting rock broke it apart at one of its joints, from which two weeks later oil escaped by reason of pumping having been resumed, causing personal injuries resulting in death, the company was held liable on the ground that it had failed to inspect the line for two weeks, at the end of which time the pumping of oil was resumed and continued for a period of two and a half hours when it was notified by the employees at the other end of the line that no oil was flowing." (Emphasis supplied.)
In accord with the aforesaid principles, it was held, in Jackson v. Texas Co., 143 La. 21, 78 So. 137, 139, L.R.A.1918D, 150 that an obligation rested upon the defendant, in conveying dangerous fluids such as natural gas, to exercise vigilance commensurate with the danger and of a character to protect the public, in person and property, from injury or destruction; and that its failure to exercise such vigilance was negligence for the consequence of which it should be held liable to the same extent as though it had discovered the leak and had failed to stop it. Wolff v. Shreveport Gas, Electric Light & Power Co., 138 La. 743, 70 So. 789, L.R.A.1916D, 1138; Koelsch v. Philadelphia Co., 152 Pa. 355, 25 A. 522, 18 L.R.A. 759, 34 Am.St.Rep. 653; Pine Bluff Water & Light Co. v. Schneider, 62 Ark. 109, 34 S.W. 547, 33 L.R.A. 366.
It was further stated, in "Thornton Oil and Gas," p. 1574, § 1161, that
"In maintaining pipe lines or mains for the transportation of oil and gas, the company is not an insurer of their safe condition and is required only to exercise ordinary care to prevent the escape of their contents. All authorities are to the effect that no absolute standard or delimitation of what constitutes ordinary care can be prescribed. In general terms it may be said that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken, which requires that the lines should be of such material and workmanship, and laid with such skill and care, as to provide against the escape, and such standard of inspection maintained as will insure with reasonable promptness the detection and stoppage of leaks which might occur from deterioration or other cause within the circumspection of men of ordinary skill in the business." (Emphasis supplied.)
Thus, an operator of a pipeline is bound to safely keep the oil it is transporting in its lines and not allow it to escape, and, if the oil does escape, to the damage of another, it is liable in damages for the injury done. The operator is bound to use care in the laying and maintaining of its lines, and to carefully inspect them to detect and stop leaks. One is bound to provide against what usually happens and what is likely to happen. It could hardly be questioned that a break or disruption of service would likely occur in an oil line laid above the surface of the ground, exposed to the elements and hazards of an infinite number of disruptions, particularly where other lines are being laid, maintained, and operated in the same vicinity and where their rights of way intersect or cross. Such perils are readily foreseeable and should be anticipated.
Thus, the owner, or other person in control of the operation of a pipeline, owes a duty to the persons who may be affected by its operation to see that such line is maintained in a reasonably safe condition and, where the use of the line has been discontinued for an appreciable length of time, to make an inspection to ascertain that the line is in a reasonably safe condition *436 before again resuming its use. The inspection should be thorough enough to determine the condition and sufficiently frequent to insure a reasonably safe condition. Failure in these respects is negligence constituting a proximate cause of the injury and damage suffered as a result thereof even though a breaking of the line by a third person may also constitute a proximate cause.
There may be more than one proximate cause of an accident or injury and, where each of the concurrent efficient causes contributes directly to the accident or injury, each of said acts constitutes a proximate cause thereof. Thus, as a general rule, negligence, in order to render a person liable, need not be the sole cause of an accident or injury. It is sufficient that negligence concurring with one or more other efficient causes combine to produce the damage or injury. Concurrent causes are causes acting together to produce an injury which would not have resulted in the absence of either. Concurrent acts of negligence which may impose liability on two parties acting separately need not necessarily occur simultaneously if they are so related to directly contribute to the accident. 65 C.J.S. Negligence § 110, p. 674.
In the instant case, the acts of Texas Eastern, or of those for which it is responsible, in severing Scurlock's pipeline, and the acts of Scurlock in subsequently releasing and transporting oil into the pipeline without making an inspection, under the circumstances shown to exist, constituted concurrent causes which, acting together, produced the damage and injury to plaintiff's land. Scurlock should, therefore, as well as Texas Eastern, respond to plaintiff in damages for the injuries resulting from their concurrent acts of negligence.
As to the extent of the damage sustained to plaintiff's property, the record discloses that a considerable quantity of oil emptied out of the broken line and settled in a creek bottom, with a substantial portion of the area, comprising 10 acres, becoming saturated and impregnated with oil. As a result of the deposit of this oil, timber and other vegetation on the area affected died. To rid the property of this deposit, it would be necessary to remove the saturated soil and then smooth back the surface. The estimates of cost vary according to the character and completeness of the job contemplated. To do a complete and satisfactory job, the uncontradicted testimony is that no less than $2,000 will be required. This, we conclude, is the extent of the damage done for which plaintiff should recover, as he is not required to accept less than full redress for his injuries.
The defendant Scurlock should, however, be credited with the sum of $750 received by plaintiff in a settlement with Texas Eastern. Where one discharges one of his codebtors, in solido, expressly reserving his rights against the other, he cannot claim the debt against the other without making a deduction of the part of him to whom he has made the remission. LSA-C.C. Art. 2203.
Plaintiff contends, however, that the aforesaid codal provision is not applicable and that, accordingly, defendant Scurlock is not entitled to a deduction of the claim by the application of the amount received from Texas Eastern as a credit. In this connection, it is claimed that while the liability of Scurlock is in tort, that of Texas Eastern is on contract. We may point out, however, it is well settled that, where a contract is breached by negligence, the party damaged may, at his option and election, base his suit for the loss sustained either on the breach of the contract or in tort. American Heating & Plumb. Co. v. West End Country Club, 171 La. 482, 131 So. 466, 469; Parro v. Fifteen Oil Co., La. App. 1st Cir., 1946, 26 So.2d 30; Transportation Equipment Co. v. Younger Bros., La.App.Orl., 1948, 34 So.2d 347, 351.
*437 As shown by his petition, plaintiff instituted this action against the defendants as joint tortfeasors and debtors, in solido. He is accordingly bound by his pleadings and his selection of the option chosen.
The defendant, Scurlock, does not complain of the award of $280 made by the trial court for damages for the trespass of that defendant upon plaintiff's property through the maintenance and operation of a pipeline. Nor may the correctness of that award be given consideration in the absence of an appeal by that defendant or an answer to plaintiff's appeal.
The cost should be borne by the defendants under the authority of the provisions of Code of Practice Art. 549, providing that the party cast shall be assessed with the cost.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed be amended and recast so as to read as follows:
It is, therefore, ordered, adjudged and decreed there be judgment herein in favor of plaintiff Samuel Dalton Wilson and against the defendant, Texas Eastern Transmission Corporation, decreeing and declaring the right of way of said defendant over, on, and across plaintiff's property, described as the
Northeast quarter of the southeast quarter and the south half of the southeast quarter of the northeast quarter, Section 27, Township 21 north, Range 4 west, Claiborne Parish, Louisiana,
as contained in a grant from C. D. Brown and Mrs. Stella Brown dated May 13, 1943, to the Defense Plant Corporation and recorded in Book 137, page 334 of the Conveyance Records of Claiborne Parish, Louisiana, be and the same is restricted to the widths necessary to make excavations adequate for the reception of the pipelines and mains heretofore laid and constructed thereon, with the right of ingress and egress over, on, and across plaintiff's aforesaid property to said lines for the purposes of inspecting, maintaining, repairing, and replacing said pipelines whenever a necessity may arise therefor, conditioned upon the payment of all damages to "stock, crops, fences, timber, and land which may be suffered from the construction, operation, renewal, alteration, inspection, or maintenance of such pipelines."
It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Samuel Dalton Wilson, against the defendant, Scurlock Oil Company, for the full sum of $1,250, as well as for the sum of $280, with five percent per annum interest on each of said sums from judicial demand until paid.
It is further ordered, adjudged and decreed that the defendants pay all costs, including the cost of this appeal, and that, as thus amended and recast, the judgment appealed be and it is hereby affirmed.
Amended and affirmed.