MILLER, Judge.
Plaintiff, Shelton Miller, is suing in tort claiming $500.00 damages to his property arising out of an alleged trespass in 1968 by defendant, Prairie Canal Company, Inc. The trial court rejected plaintiff’s demands and he has appealed.
The trial judge rendered a comprehensive and well written opinion which we adopt as our own, to-wit:
“This is a suit claiming damages in the sum of $500 for an alleged trespass on plaintiff’s property by the defendant in October, 1968, for the destruction of certain pasture and for tearing down plaintiff’s fence and allegedly replacing the same in a place other than the location of the prior existing fence. The damages claimed are not itemized. The defendant denied the alleged trespass and the damaging of the plaintiff’s property. Defendant asserts that it entered the plaintiff’s land under a canal right of way reserved to the defendant in a sale of the property to one Xavier McComb, for the purpose of cleaning out the canal, in the course of which the defendant alleges it caused no damages by negligence and that it restored the fences on the property line that has been recognized for many years.
“The evidence discloses that the alleged trespass occurred in the Southeast corner of the Southeast Quarter of the Southeast Quarter of Section 11, Township 11 South, Range 8 West, which was part of a tract of land sold by the defendant to Mr. Mc-Comb on July 8, 1942, by virtue of the deed filed in evidence as P-2. In that deed, the land was sold to McComb subject to certain reservations by Prairie Canal Company, Inc., including a reservation of right of way for a canal now in use by said company. The evidence disclosed that the canal had been used each year since the reservation was made. On February 7, 1955, McComb sold the land to Drozan Miller, Alcie Theriot and Shelton Miller and, on April 14, 1961, said three purchasers partitioned the land and Tract 1, as shown on the plat of partition, was received in full ownership by the plaintiff in this case. Tract 1 is the eastern portion of the land divided and contains the area in the Southeast corner of the Southeast Quarter of the Southeast Quarter where the alleged trespass was committed and the damages sustained.
“According to the evidence, at the time of the alleged trespass, the defendant had a servitude or right of way for a canal as in *754 use at the time of its reservation thereof in the deed to McComb. As mentioned above, the evidence shows that the canal has been used each year since the reservation was made, from which it must be concluded that the servitude or right was still in existence in October, 1968. The Court also concludes that the defendant has the right to enter plaintiff’s land for the purpose of maintaining and cleaning out the canal. Plaintiff urges that it was not shown how wide the canal was at the time the right of way therefor was reserved. Such inquiry might be involved in consideration of the area affected by defendant’s operations in maintaining and cleaning out the canal, but it does not pertain to the defendant’s right to enter the land for the purpose of maintaining and cleaning the same. In other words, it must be concluded that the defendant has not the right to cause unnecessary damage to plaintiff’s land in maintaining and cleaning out the canal, which the Court concludes the defendant had the right to do. In that connection, the plaintiff does not present any evidence that indicates the cancal was unnecessarily widened beyond its size at the time the defendant reserved the right of way therefor. On the contrary, E. A. Riquelmy, who stated he had been employed for 35 years by the defendant and its predecessors and was familiar with this canal and right of way, testified that its levees were narrowed when it was rebuilt in 1968, and that it is now actually narrower than when the right thereto was reserved in 1942.
“The plaintiff identified various pictures showing the new levee banks, the old fence lines to the points where the old fences were taken down by the defendant to enable the maintenance operations to be performed, the new fences installed by the defendant, the new corner post, an area where the bulldozer had scraped the ground clean outside of the new levees, and another area where certain alleged markings had been left by the bulldozer in its operations. The plaintiff also identified a sketch of the particular area in the Southeast corner upon which were marked certain distances, and showing dotted lines as being the location of the old fence on the South and East lines of the property, as related to the location of the new fence installed by the defendant. In his testimony about what was done on the property by the defendant, the plaintiff was corroborated by the testimony of Warren Lee Diamond, who stated he lived on the property and was familiar with the work done by the defendant in the Southeast corner thereof. It was stipulated that he would give the same testimony in relation to defendant’s operations on the property, as well as with respect to the pictures, distances, etc., as was given by the plaintiff. The only evidence presented by the defendant was that of Mr. Riquelmy, who did not deny that the plaintiff’s fence had been taken down, but asserted that the new fence had been constructed and that he was satisfied the new fence was in the same place as the one replaced. Riquelmy testified that the bare ground, where it is claimed that grass was taken from the land outside of the levees, was the location of the old levees. In considering these issues, the plaintiff’s right to recover any damages depends upon whether the defendant has unnecessarily and negligently damaged plaintiff’s property in the operations and, if so, the amount of the loss or damage that may have been proven sufficiently to justify an award therefor. The Court must conclude that it was necessary, for the maintenánce operations, to remove plaintiff’s fence in a portion of the Southeast corner of the property, to permit bulldozer operations to reconstruct canal levees, etc. Such operations necessarily would require turning around of the equipment used, which would normally cause some injury to grass in the particular area. The plaintiff has not furnished any evidence to show the monetary loss to him occasioned by the temporary loss of grass in a small area affected by these operations, if in fact there was such a loss beyond the area in which the old canal levees,existed. *755 The principal cause of complaint seems to have been based upon failure of the defendant to put the new fence in the place where the old fence existed. Allegedly, this left certain strips of property on the South and East line outside of plaintiff’s fence. This does not cause the plaintiff any loss of ownership of land, although he was entitled to have the fence replaced on the existing fence lines. Mr. Riquelmy claims that was done, whereas Mr. Miller and Mr. Diamond claim it was not so done. If the plaintiff’s claim in this respect is correct, he is entitled to the cost of removal of the new fence to the old location. At this point, the Court is unable to find any evidence in the record upon which an award could be based to cover the cost of removal of the fence to its pre-existing location.”
On the question of law, the thrust of plaintiff’s appeal is that a servitude owner must have the consent of the landowner before going upon his property to use the servitude. In support of his position plaintiff relies upon the case of Dickson v. Arkansas Louisiana Gas Co., 193 So. 246 (La.App. 2 Cir. 1939). In Dickson, the gas company, without the knowledge of the plaintiff, laid a second line under a contract which gave it the right to lay one line only. The Court correctly held that the laying of the second line constituted a trespass, but its reasoning left no doubt that the gas company had the right to repair or replace its original line.
In the present case, defendant owns a canal servitude across plaintiff’s land and implicit in any servitude is the right to use it for the purposes for which it is intended. Equally implicit in this right is that its exercise does not deppnd upon the consent of the landowner. If defendant is required to obtain permission to go upon plaintiff’s land this would of necessity imply that plaintiff has the right to refuse permission and that, in itself, would negate the “right” of servitude. LSA-CC Art. 772 is controlling, to-wit:
“Art. 772. He to whom a servitude is due, has a right to make all the works necessary to use and preserve the same.” See also LSA-CC Art. 774.
That is not to say that defendant should not have notified plaintiff of his plans as a matter of courtesy and in the interest of harmony. Had defendant done so, this lawsuit might never have been filed. But defendant had no legal obligation to give notice in this instance.
The trial court properly found the evidence failed to prove damages to plaintiff’s property. Had the canal’s banks been widened this would have presented a different cause of action. The testimony shows the canal was narrowed and there was no negligent injury to plaintiff’s property in the process. See LSA-CC Art. 778.
 Plaintiff’s principal factual complaint is that the fence was put in a different place. If this is true defendant is obligated to put the fence in its proper place or pay damages for the cost of moving it. Even if we assume the fence is in the wrong place, plaintiff did not ask that defendant move it but rather asked for damages only. In his brief plaintiff claims reimbursement for 27 posts at 50^ per post, a $10.00 roll of wire and wages of $2.00 per hour per man for labor. Of these three items claimed by plaintiff, two, the posts and wire, were furnished by defendant and could be used again and the third item, the labor, was not proved since plaintiff merely stated labor costs were $2.00 per hour per man without showing how many hours were required to move the fence. Plaintiff has not carried the burden of proof and we are not at liberty to speculate.
We affirm the judgment of the trial court rejecting plaintiff’s demands. Costs are taxed to plaintiff-appellant.
Affirmed.