162 So. 751

**COMPTON v. AMICABLE LIFE INS. CO. OF WACO, TEX.**

No. 32831.

May 27, 1935.

Rehearing Denied July 1, 1935.

Harold W. Hill and John R. Hunter, both of Alexandria, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

O'NIELL, Chief Justice.

This suit was dismissed on a plea of prescription and an exception of no cause of action. The district judge decided that both pleas were well founded. The plaintiff has appealed.

The suit is for a disability benefit, under a life insurance policy for $2,000, with a so-called "supplemental agreement" for the payment of $10 per month per thousand dollars of life insurance, in case of total and permanent disability of the insured by bodily injury or disease. The plaintiff claims the penalty of double indemnity, that is, an additional $20 per month, and $750 attorney's fee, under Act No. 310 of 1910.

The policy was issued on the 14th of February, 1931. The quarterly premium was $14.94, payable on the 14th of February, May, August, and November, each year; which included a quarterly premium of $1.36 for the disability benefit, to terminate, however, when the insured would be 60 years of age. He was only twenty-six when the policy was issued.

He avers that, on the 28th of March, 1931, while he was performing his duties as an employee of an oil company, gaging the contents of a gasoline tank, about 35 feet above the ground, he was overcome by the fumes and fell to the ground, the distance of 35 feet, falling on his back and head, and fracturing that part of the vertebral column called the sacrum, and several vertebræ, and sustaining other bodily injuries, rendering him totally and permanently disabled, so that he has become continuously prevented from engaging in any occupation whatsoever for remuneration or profit during the remainder of his life. He avers that there was no default in the payment of the premium on the insurance policy at the time of the accident; the next premium then being the quarterly premium of $14.94 to come due on the 14th of May, 1931. He avers that, immediately after the accident, and while he was confined in a hospital, he was advised by an agent of the company, whom he names, that, because of his total and permanent disability, he would not have to pay the premium that would come due on the 14th of May, or any further premiums; the agent having reference to the stipulation in the policy that the company would continue the policy in force without requiring the payment of premiums during the continuance of such disability as the defendant was then afflicted with. He avers that the agent assured him that he, the agent, took notice of the disability, for the company, and would report the matter to the company without delay; hence plaintiff avers, according to his belief, that the agent did notify the company of the accident and of plaintiff's total and permanent disability, and that, if the company did not receive the notice at its home office from the agent, the company received notice through the agent. He avers that because of the assurances given to him by the agent of the company, he did not remit the quarterly premium of $14.94 which, but for the happening of the accident before

that date, would have been due on the 14th of May, 1931. He avers that the company never gave him the "proper notice of the maturity of the premium," as required by Act No. 68 of 1906; hence he avers that the policy has not been forfeited, or legally declared forfeited, by the company. He avers that, on the 1st day of August, 1931, having failed to receive any disability benefit from the company, he furnished ample and sufficient proof of his total and permanent disability, and demanded payment of the amount due him under the policy; but that the company refused to pay, claiming that the policy was forfeited by default in the payment of the premium due on the 14th of May, 1931. He avers that the company therefore refused to furnish the forms for making proof of his disability; and he avers that the physicians' certificates which he furnished to the company should be deemed sufficient proof of his total and permanent disability.

The suit was filed on the 11th of December, 1933, more than two years after the date, the 14th of May, 1931, on which the quarterly premium of $14.94, which was not paid, was due, if the policy was not by its terms continued in force without requiring the payment of premiums after the accident happened.

The so-called "Supplemental Agreement for Total and Permanent Disability," attached to and forming part of the policy, provides:

"Amicable Life Insurance Company agrees, that whenever the Company receives due proof before default in the payment of any premium due upon this Policy that the Insured, prior to the anniversary of the Policy on which the Insured's age at nearest birthday is sixty years, has become totally and permanently disabled by bodily injury or disease so that he is and will be presumably thereby permanently and continuously totally disabled for life, and by reason thereof permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and such disability has, upon the date of submitting proof, existed for not less than ninety days, to grant the following benefits, subject to all the provisions of this Supplemental Agreement:

"First.—Continue the Policy without requiring the payment of premiums, if any, thereafter falling due during the continuance of such disability and in any settlement of the Policy the Company will not deduct the premiums so waived. The loan and surrender value and all other benefits under this Policy shall continue the same as if the waived premiums had been paid as they became due.

"Second.—Pay to the insured a sum equal to $10.00 for each thousand dollars of the face amount of this Policy upon the date of the approval of said proof, and a like amount upon the same date of each month thereafter during the life of the Insured while the Insured is totally and permanently disabled according to the provisions of this Supplemental Agreement.

If there be any indebtedness on this Policy, the interest thereon may be deducted from the monthly payments. Such income payments shall not reduce the sum payable in any settlement of this Policy."

The further provisions in the "Supplemental Agreement" are not pertinent to this case. They have reference to the right of the medical adviser of the company to examine the insured, and the right of the company to require, from time to time, but not oftener than once a year, due proof of continued disability; and there is a stipulation that any one of certain specified afflictions shall be deemed a total and permanent disability.

■ A careful reading of the language which we have quoted leaves no doubt that, in order for a policy like this one to be continued in force without the payment of premiums after the insured has become totally and permanently disabled, the company should receive due proof of the total and permanent disability of the insured before a default has occurred in the payment of a premium due on the policy. Although, obviously, the total and permanent disability of the insured is the cause or reason for exempting him from the payment of premiums in order to continue the policy in force, the exemption does not take place immediately in consequence of the occurrence or beginning of the total and permanent disability. The exemption from the payment of premiums arises only when the company receives due proof of the total and permanent disability, after it has existed 90 days or longer, and before a default has occurred in the payment of a premium on the policy.

■ If the allegations in the plaintiff's petition are true, and we must assume that they are true for the purpose of determining whether he has set forth a cause of action, the agent of the company must have misinterpreted the language in the so-called supplemental agreement, attached to and forming part of the policy, exempting the insured from the payment of premiums after being totally and permanently disabled; and the agent's misunderstanding of the language, perhaps in good faith, must have caused the insured to misunderstand it, or to rely upon the agent's plausible interpretation, that the insured was exempted from the payment of premiums by becoming totally and permanently disabled, within the meaning of the policy. The insurance company invokes here one of the "General Provisions" of the policy, viz.:

"No one on behalf of the Company is authorized to make, modify or discharge this or any contract, to grant credit, or to extend the time for paying any premium, or to waive any lapse or forfeiture, or to bind the Company by making any promise, or by making or receiving any representation or information not contained in the written application for this Policy, as such powers can only be exercised in writing by the President or Secretary of the Company at its Home Office, and shall not be delegated."

That one of the general provisions in the policy might relieve the company of liability in this case were it not for the fact, if it is a fact, that the company failed to give the insured the notice required by Act No. 68 of 1906, not less than 15 nor more than 45 days before the 14th of May, 1931. The plaintiff alleges that the notice was not given, as required by the statute, which declares that a life insurance company shall not within one year after a default in the payment of a premium declare a policy (excepting certain specified kinds of policies of which this is not one) forfeited or lapsed, and that no policy shall be forfeited or lapsed within one year from the failure to pay a premium when due, unless a written or printed notice is mailed to the insured (or to the assignee if notice of an assignment has been given to the company) at least 15 days and not more than 45 days before the day on which the premium is due, stating the amount of the premium falling due, the place where it is to be paid, and the person to whom it is payable, and stating that unless the premium is paid on or before the day on which it is to fall due the policy and all payments thereon will become forfeited and void except as to the right to a surrender value, or extended insurance, or a paid-up policy. The statute provides further that, if the payment so demanded by the notice is made within the time limited therefor, it shall be taken as in full compliance with the requirements of the policy in respect to the time of payment; and that no such pol-icy shall in any case be forfeited, or declared forfeited or lapsed, until the expiration of 30 days after the mailing of such notice. The statute provides that the affidavit of any officer, clerk, or agent of the company, or of any one authorized to mail the prescribed notice, that the notice required by the statute was addressed and mailed by the company issuing the policy, shall be presumptive evidence that the notice was duly given. And the statute ends by providing for the prescription or limitation of the right of action "to recover under a forfeited policy," thus:

"No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued."

The argument made in support of the exception of no cause of action is that, inasmuch as the plaintiff alleges that his reason for not paying the premium due on the 14th of May, 1931, was that the agent of the company assured him that his total and permanent disability had relieved him of the payment of premiums falling due thereafter, he could not consistently complain of a failure of the company to send him the notice required by Act No. 68 of 1906. We do not see any inconsistency in the plaintiff's alleging that he did not pay the premium because of the assurance given to him by the agent of the company, and,

at the same time, alleging that the company did not give him the notice required by the statute. On the contrary, the company's failure to give the notice, if the company did fail to give the notice, was in accord with the assurance given by the agent of the company, if he did give the assurance, that the insured would not have to pay the premium falling due on the 14th of May, 1931. However that may be, it has been decided by this court that the giving of the notice required by Act No. 68 of 1906 is essential to a forfeiture of a policy of insurance for default in the payment of a premium when due; and that, as the requirement of the notice is a matter of public policy, it cannot be dispensed with by a counterstipulation on the part of the insurer. See Boring v. Louisiana State Insurance Co., 154 La. 549, 97 So. 856.

Our conclusion is that the plaintiff's petition does set forth a cause of action. It would be close kin to a denial of justice to dismiss his suit without giving him a hearing upon the subject of the interpretation which the agent of the insurance company put upon the contract, and which induced him, the insured, to fail to pay the premium falling due soon after he became totally and permanently disabled. There could be no reason, other than some such advice on the part of an agent for the insurance company, why the insured should not pay the premium which was coming due, after he was totally and permanently disabled and anxious to keep the insurance in force. It is not likely that he could not have borrowed, if he did not have, the $14.94, which was less than the amount which would be paid him every month after 90 days. His right to the disability benefit of $20 per month, or to the $2,000 of life insurance if his injuries should be fatal, had actually accrued. There was then nothing speculative in the matter of paying or failing to pay the $14.94. Some courts have gone so far as to hold that a policy like the one before us is continued in force without the payment of premiums if the insured becomes totally and permanently disabled before a default occurs in the payment of a premium and dies after having failed to pay a premium when due, without having recovered from his disability. It was so decided in Minnesota Mutual Life Insurance Co. v. Marshall, 29 F.(2d), 977, 978, where Judge Martineau, for the United States Circuit Court of Appeals, for the Eighth Circuit, made this appropriate comment:

"However much the legal mind may differ as to the meaning of these provisions, the ordinary layman would construe them to mean that, in the event he became disabled before his premium fell due, his insurance would be continued until his disability was removed or until his death. That is the natural and reasonable construction to be placed upon the language used in this policy. Any other construction, to my mind, would be contrary to the full purpose of the contract and deprive the insured of one of the principal benefits of his policy. The right of the insured to have his

premiums discontinued during disability is one that he had paid for. To make its operation depend upon the time of proof of disability, and not upon the time of disability itself, which was the real thing that he was protecting himself against, renders the provision of the policy under construction inoperative and the right of no value."

We need not go that far in this case. It is sufficient to say that the plaintiff's allegation that the insurance company failed to give him the notice required by Act No. 68 of 1906, with regard to the premium falling due on the 14th of May, 1931, is the same as to say that the policy was continued in force without the payment of that premium; and as to all subsequent premiums the policy was continued in force by the furnishing of proof of the total and permanent disability after it had lasted 90 days.

There might have been some merit in an exception of vagueness, with regard to the plaintiff's allegation that the company failed to give him "proper notice" of the maturity of the premium falling due on the 14th of May, 1931, but for the fact that the company knows what notice was given, if any, and may set forth the facts in answer to this suit.

The plea of prescription is not well founded, for the simple reason that the plaintiff is not suing "to recover under a forfeited policy." The only instance in which a suit "to recover under a forfeited policy" may be maintained is when the suit is for something which the plaintiff is entitled to notwithstanding the policy has lapsed or become forfeited; e. g., a suit for the cash surrender value of the policy. The prescription provided for in this statute was pleaded and sustained against an action for the cash surrender value of a life insurance policy which had lapsed or become forfeited for nonpayment of the premiums, in the case of Watson v. Mutual Life Insurance Company of New York, 139 La. 737, 72 So. 189. It would be anomalous to apply this statute of limitations to a suit for the amount of life insurance or disability insurance stipulated in a policy alleged to be not lapsed or forfeited. A suit "to recover under a forfeited policy" the amount of the insurance could not be maintained, no matter how soon it is instituted after the default in the payment of the premium. Besides, a suit to collect life insurance cannot be brought until the insured has died, which might be later than two years after a default in the payment of a premium, for which a forfeiture is claimed by the company.

Act No. 68 of 1906 is a copy, almost verbatim, of the New York Insurance Law of 1892, c. 690, § 92, as amended by the Laws of 1897, c. 218, § 2, and by the Laws of 1906, ch. 326, § 29 (McKinney's Consol. Laws of N. Y. Anno. Book 27, p. 144, sec. 92). That part of the statute which establishes the limitation, or prescription, is exactly the same in the Louisiana statute as in the New York statute. The New York Court of Appeals maintains that the statute

is not applicable to a suit on a policy alleged to be not forfeited, or alleged to have been illegally declared forfeited by the company. On that subject, in Adam v. Manhattan Life Insurance Co., 204 N. Y. 357, 97 N. E. 740, 742, in 1912, the court said:

"It is now contended that, by reason of the amendment of the Laws of 1877 by chapter 218 of the Laws of 1897, the right of the plaintiff to maintain the action is barred by the two-year statute of limitations. The provisions of that statute, so far as now material, are as follows: "Sec. 92. * * * No action shall be maintained to recover under a forfeited policy, unless the same is instituted within one year from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued.' This act was again amended in 1906 (chapter 326), in which two years are substituted in the place of one year. In view of the fact that Hepworth [the insured] did not die until April, 1907, and no cause of action accrued upon the policy until that time, it is not apparent how the statute of limitations could become operative before the happening of that event. It will be observed that no action shall be maintained to recover under a forfeited policy. Under the verdict of the jury and the statute to which we have alluded, the plaintiff's policy was not forfeited, so that this action is not an action maintained under a forfeited policy. * * *"

In Thompson v. Postal Life Insurance Co., 226 N. Y. 363, 123 N. E. 750, 751, in 1919, Judge Cardozo, for the court, construed the statute of limitations, thus:

"One other defense remains to be considered. The defendants plead the statute of limitations in bar of a recovery. Section 92 of the Insurance Law provides that—

" 'No action shall be maintained to recover under a forfeited policy, unless the same is instituted within two years from the day upon which default was made in paying the premium, installment, interest or portion thereof for which it is claimed that forfeiture ensued.'

"We held in Adam v. Manhattan Life Ins. Co., 204 N. Y. 357, 97 N. E. 740, that 'a forfeited policy' within the meaning of this provision is one rightfully forfeited. A forfeiture asserted without right leaves the policy intact. * * *"

It is plain, therefore, that this statute of limitations, or prescription, is applicable only to a suit to recover something which the plaintiff might be entitled to notwithstanding the policy of insurance has lapsed or become forfeited.

The judgment appealed from is annulled, the plea of prescription and the exception of no cause of action are overruled, and the case is ordered remanded to the district court for trial on its merits. The defendant, insurance company, is to pay the costs of this appeal; the question of liability for other court costs is to abide the final disposition of the case.