122 So.2d 344 (1960)
Joseph L. CLARK et al., Plaintiffs-Appellants,
v.
Mrs. Elva REED, Defendant-Appellee.
No. 9218.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1960.
*345 Bodenheimer, Looney & Richie, Shreveport, for appellants.
Robert Harwell Lee, Benton, for appellee.
AYRES, Judge.
Plaintiffs, ten in number, residents, owners, and occupants of homes in Coleman Park Subdivision, Unit No. 2, a subdivision of Bossier City, Louisiana, seek, by injunctive process, the enforcement of restrictive covenants limiting the use of the property of said subdivision, and particularly Lot 119 thereof, occupied by defendant, to residential purposes.
Plaintiffs allege the defendant has converted a portion of her residence to a beauty shop, or salon, has installed therein the necessary equipment to carry on said commercial enterprise, and has been, and is now, operating said business to their annoyance and in deprivation of their rights to the peace and quiet of a residential area free from noise, confusion, and other disturbances incident to commercial establishments, and in violation of the restrictive covenants imposed by the subdivider upon the whole of said subdivision.
Plaintiffs have appealed from a judgment sustaining an exception of no cause and of no right of action.
The exception of no right of action is untenable because it is inappropriate and without application to the facts alleged.
The facts, as alleged and disclosed by attached documents and exhibits material and pertinent to a consideration of the exception of no cause of action, may be briefly stated. Coleman Development Company, Inc., as the owner of the subdivision, acting through Donald S. Coleman, its president, cause to be made a survey and plat of the subdivision, followed by the execution of an instrument in notarial form imposing certain restrictive covenants upon all the property of the subdivision, among which covenants was the restriction that "No lot shall be used except for residential purposes." This instrument is dated March 2, 1955, and was duly filed for record in the conveyance records of Bossier Parish, Louisiana, March 22, 1956. The plat, however, was filed for record March 12, 1956. No reference is made on the plat to any restrictive covenants or to a separate act imposing restrictive covenants upon the property contained in the subdivision.
A portion of the aforesaid instrument, which we deem material, reads as follows:
"Protective Covenants on Coleman Park Subdivision, Unit No. 2, a Subdivision of Bossier City, Bossier Parish, Louisiana, as per Plat Recorded in Conveyance Book 275, Page 31, Records of Bossier Parish, Louisiana.
"State of Louisiana |
 }
Parish of Caddo |
"Before Me, the undersigned authority in and for said Parish and State, came and appeared Donald S. Coleman, President of Coleman Development Company, Inc.
"Who declares:
"That there has been filed for record in Bossier Parish, Louisiana, Coleman Park Subdivision, Unit No. 2, as shown *346 by plat thereof recorded in Book 275, Page 31 of the Conveyance Records of Bossier Parish, Louisiana, and said Coleman Development Company, Inc. is now the sole owner of the said Subdivision in its entirety.

"Appearer further declares on behalf of said Corporation that from this date forward said Subdivision and the respective tracts therein, as shown on the plat referred to above, is held and shall be owned, held and conveyed subject to the following reservations, restrictions and covenants:
I.

"No lot shall be used except for residential purposes. * * *
* * * * * *
XVI.
"Enforcement shall be by proceedings at Law or in equity against any person or persons violating or attempting to violate any covenants either to restrain violation or to recover damages.
* * * * * *
"Thus Done and Signed in the presence of the undersigned competent witnesses and me, Notary, in Shreveport, Louisiana, on the 2nd day of March, 1955.
"Coleman Development Company, Inc.
 "By /s/ Donald S. Coleman
 _________________________________
 "/t/ Donald S. Coleman, President
"Attest:
"/s/ Dean Hudson
________________
"/t/ Dean Hudson
"/s/ Muriel A. Smith
____________________
"/t/ Muriel A. Smith
 "/s/ Charles E. Tooke, Jr.
 __________________________
 "/t/ Charles E. Tooke, Jr.,
 Notary Public.
 (Seal)"
(Emphasis supplied.)
On the filing of the aforesaid instrument, an endorsement was entered on the reverse thereof, reading as follows:
 "Register Number 108186
 Coleman Park Subdivision,
 Unit #2
 to
 The Public
 Certified Copy of
 `Restrictions'"
The basis of the exception is twofold. It is first contended that the allegations of the petition are insufficient to state or disclose a cause of action in that the petition does not allege Coleman Development Company, Inc., was the common author-in-title of the property of plaintiffs and defendant. Secondly, it is contended that inasmuch as the plat, as recorded, makes no mention of any restrictive covenants, or to any instrument imposing restrictive covenants, upon the property, and that, inasmuch as the petition does not allege any recital as to restrictive covenants in the chain of title of either plaintiffs or defendant, the petition fails to disclose a cause of action. Thus, it is claimed the petition does not affirmatively assert that the use of defendant's property is limited or restricted by any covenant.
In support of her first contention, defendant urges the necessity of appropriate allegations in order to establish the common ancestorship-in-title of Coleman Development Company, Inc., in order that plaintiffs may have the benefit of, and defendant be affected or bound by, restrictions imposed by it. Defendant insists that plaintiffs' allegations are insufficient to disclose such common authorship, or ancestorship-in-title, or that her property is affected by the restrictive covenants allegedly imposed thereon by the alleged former owner.
In giving consideration to an exception of no cause of action, the allegations of fact contained in the petition must, for the purpose of the trial of the exception, be accepted as true. Overby v. Beach et al, 220 La. 77, 55 So.2d 873; Nielsen v. Planters Trust & Savings Bank of Opelousas, 183 La. 645, 164 So. 613; Commercial Nat. Bank in Shreveport v. Haas et al., 182 La. *347 502, 162 So. 57; Compton v. Amicable Life Ins. Co. of Waco, Tex., 182 La. 991, 162 So. 751, 105 A.L.R. 1087. Moreover, in determining the correctness of a judgment maintaining an exception of no cause of action, it is a well-settled rule of law that the exception addresses itself to the sufficiency in law of the petition and the exhibits attached thereto. Johnston v. City of New Orleans, 234 La. 697, 101 So.2d 206. And, in giving consideration to such an exception, it is accordingly well established that the contents of documents annexed to a petition must be accepted as true as well as the well-pleaded allegations of fact of the petition itself. Johnston v. City of New Orleans, supra; Everhardt v. Sighinolfi, 232 La. 996, 95 So.2d 632; Louisiana State Board of Education v. Lindsay, 227 La. 553, 79 So.2d 879; Stacy et al. v. Midstates Oil Corporation et al., 214 La. 173, 36 So.2d 714; Leidenheimer et al. v. Schutten, 194 La. 598, 194 So. 32; Burtrum Bros. Motor Co. v. Dryden, La. App., 38 So.2d 88.
It may be here pointed out that plaintiffs allege the creation and imposition, upon all the property of the subdivision, of the restrictive covenants as recited in a notarial act duly filed and recorded in the conveyance records of the parish where the property is situated. Moreover, a copy of the instrument, attached to and made a part of plaintiffs' petition, recites that "Coleman Development Company, Inc. is now the sole owner of the said Subdivision in its entirety." (Emphasis supplied.) Accepting as true the allegations of the petition and the aforesaid recital of the document attached thereto, as we must in giving consideration to the exception, it clearly appears that Coleman Development Company, Inc., was the subdivider of the property; that it created and imposed the restrictive covenants upon the property by the execution and recordation of the foresaid instrument, and is the common author and ancestor-in-title of plaintiffs and defendant. Hence, the conclusion is inescapable that the first of defendant's contentions is without merit.
If a more detailed or more complete disclosure of their titles was deemed desirable by the defendant, appropriate recourse was available through a plea of vagueness or a motion and prayer for oyer of the documents desired for examination.
Next for consideration is the second of the contentions urged by defendant. The position taken is that the recorded plat of the subdivision makes no mention of any restrictive covenants; nor is there, in her chain of title, any recital to that effect. Defendant, in brief, concedes the right of the developer of a subdivision to create and impose restrictions on the use to be made of the property by his vendees and all subsequent owners in such forms as have been denominated as servitudes, real rights or obligations, or covenants running with the land. Thus, it is contended the exception of no cause of action is directed, not to the right of the developer of a subdivision to impose the restrictions but, to the procedure by which these restrictions were allegedly created and imposed.
In this connection, defendant points out that, for the creation and imposition of these restrictions, plaintiffs rely upon the provisions of a notarial act, of which no reference is made on the recorded plat of the subdivision or in any instrument constituting a link in defendant's chain of title. In substance, the defense is that no restriction is allegedly contained in defendant's chain of title. The question posed by defendant: Is defendant's property burdened with covenants restricting its use where such covenants are not contained in any of the deeds under which she holds, and are not shown or referred to on the plat of the subdivision, but which are allegedly created and imposed by a duly recorded notarial act of the subdivider which refers to the plat and survey of the subdivision but which plat makes no reference to the instrument purporting to create and impose the restrictive covenants?
*348 We had occasion to consider a similar question recently in McGuffy v. Weil et al., La.App., 120 So.2d 358. There, Guy P. Stubbs, as the owner of a plot 160 feet square at the northeast corner of the intersection of Stubbs Avenue and North Third Street in the City of Monroe, sold, therefrom, to Solomon S. Goldman, a lot measuring 60 feet frontage on Stubbs Avenue, located 100 feet east of North Third Street, with a depth of 160 feet. The vendor retained title to the corner lot, reduced to a frontage of 100 feet on Stubbs Avenue. Stubbs, by a separate notarial act, created and established certain restrictions upon the lot retained by him, among which was that the use of the property was restricted to residential purposes. Stubbs subsequently sold the lot to the Ouachita National Bank of Monroe, which later sold the property to McGuffy. In neither deed was there any mention of the restrictions created and imposed by Stubbs in the agreement executed and recorded when he sold the adjoining lot to Goldman. There, we held that the restriction, servitude, or real obligation established and created by Stubbs in an instrument duly recorded affected and restricted not only Stubbs' use but that of subsequent owners of the property, even though such restrictions were not mentioned or referred to in the subsequent sale by Stubbs or in the deed by which plaintiff acquired title from Stubbs' vendee. In the cited case, the defendants, as the plaintiffs in the instant case, relied upon the provisions of LSA-C. C. Art. 2015 and other appropriate provisions of the Civil Code. This article provides:

"Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it, although he have made no stipulation on the subject, or they be not mentioned in the act of transfer. The purchaser may, if the circumstances permit it, have relief against the seller for concealment of such charges; but the law establishes the rule that no one can transfer a greater right than he himself has, except where the neglect of some formality required by law has subjected the owner of the real incumbrance to a loss of his right, in favor of a creditor or bona fide purchaser." (Emphasis supplied except for the word bona fide.)
In the McGuffy case, we pointed out that
"LSA-C.C. Art. 709 provides that owners have the right to establish, on their estates, or in favor of their estates, such servitudes as they deem proper. Restrictive covenants, such as claimed here, are continuous and nonapparent in character (LSA-C.C. Arts. 727 and 728) and may be established or created by all acts by which property can be transferred (LSA-C.C. Art. 743); and, where the servitudes are continuous, nonapparent, or discontinuous, whether apparent or not, they can only be established by title (LSA-C.C. Arts. 766 and 770), such as in the case of transfer of title to immovable property. Long-Bell Petroleum Co., Inc., v. Tritico, 216 La. 426, 43 So.2d 782, 791; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Hanby v. Texas Co., 140 La. 189, 72 So. 933.
"A servitude may be established or acquired in favor of an estate which does not exist or of which one is not then the owner (LSA-C.C. Art. 747), and LSA-C.C. Art. 754 provides that where the act establishing the servitude fails to declare whether the right is given for the benefit of an estate or to a person who is the owner of the estate, consideration must then be given as to whether the right granted be of a real advantage to the estate or one merely of personal convenience to the owner (LSA-C.C. Art. 755), and, if the right granted be of a nature *349 to assure a real advantage to an estate, it is to be presumed that such right is a real servitude, although it may not be so styled. Even if the concession, from its nature, is a matter of personal convenience, it is considered personal but nevertheless may be made real by express declaration of the parties. LSA-C.C. Art. 757. Moreover, when obligations are attached to immovable property, they become real obligations (LSA-C.C. Art. 2010) and pass with the property (LSA-C.C. Arts. 2011, 2015)." [120 So.2d 362.]
No orthodox form is necessary to establish a servitude. It is only necessary that the party clearly express his intention in an instrument to establish one. Noel Estate v. Kansas City Southern & Gulf R. Co., 187 La. 717, 175 So. 468.
Defendant concedes, and properly so, that, had the restrictions appeared on the plat of the subdivision or a notation made on the plat referring to the restrictions as elsewhere recorded, the restrictions would be valid and enforceable as a servitude or covenants running with the land. The same logic would support the establishment of a servitude or real obligation by means of a separately-recorded instrument where the restrictions are clearly defined and the property affected adequately described. The presence of the separate instrument on the records is as readily ascertainable as the plat itself, not only because of its own recitals but from the language of its endorsements and by which it is presumably indexed in the conveyance records, despite the fact that indices are not part of the records as respects the legal effect of instruments as recorded or the sufficiency of registration as notice to third persons. Central Lumber Co., Inc., v. Whittington et al., 12 La.App. 695, 127 So. 79; Agurs v. Belcher & Creswell, 111 La. 378, 35 So. 607; Swan v. Vogel et al., 31 La.Ann. 38.
In a comment in 33 Tulane Law Review, 822, 829, entitled "Equitable Restrictions" in Louisiana, it was observed:
"Presence of the restriction in the chain-of-title does not necessarily mean that it must actually be present in the conveyance deed or deeds; it may be incorporated by reference. Under Article 743 [Civil Code] building restrictions may also be established by any act which would suffice to transfer property. Thus, in Pizzolato v. Cataldo. [202 La. 675, 12 So.2d 677] the landowners successfully created a servitude by a contract which was separate and apart from the deed of conveyance. The contract creating the servitude must be recorded to affect third parties." L.S.A.-C.C. Arts. 2264, 2266; McDuffie v. Walker, 125 La. 152, 51 So. 100. (Emphasis supplied.)
Therefore, as pointed out in McGuffy v. Weil et al., under the provisions of LSA-C.C. Art. 2015, an owner may impose real obligations, whether in the nature of a servitude, a restriction, or other real obligation, upon his land while ownership is vested in him, or, as the article provides, "* * * before the alienation of the soil, * * *." Thus, the servitude need not be necessarily established by a deed or created in an act of sale. It suffices that the servitude was created and imposed in an act sufficient in form for the transfer of property. LSA-C.C. Art. 743. The instrument, in notarial form, was of such a character. Nor, under the provisions of LSA-C.C. Art. 2015, is the omission of any reference to the restrictions in the deed from the developer or subdivider, or in the deed to defendant, material, for, as therein provided, real obligations accompany the land in the hands of subsequent vendees without any mention thereof in the acts of transfer. The instrument, as recorded, therefore, constituted a link in, and an incumbrance on, defendant's title.
*350 The covenants created and imposed in the aforesaid instrument by Coleman Development Company, Inc., constituted a general plan and scheme of development of the subdivision and were duly recorded.
To hold, as defendant contends, that the plat must refer to the restrictive covenants would be, in effect, to hold that after the filing of a plat, the developer or subdivider could not impose restrictive covenants upon the property. The position is obviously untenable as, by reference to the codal authorities heretofore cited, particularly Arts. 709 and 2015, owners, as long as they are the owners, have a right to establish upon their properties such servitudes as they deem proper. Covenants, as to the use when thus created and imposed upon real property by written recorded instruments, pursuant to a general plan or scheme of development, constitute real rights and obligations running with the land and inure to the benefit of all subsequent owners, as do similarly created and imposed building restrictions, and the remedy to prevent violations thereof is by injunction. Edwards et al. v. Wiseman et al., 198 La. 382, 3 So.2d 661; Quachita Home Site & Realty Co. v. Collie et al., 189 La. 521, 179 So. 841; Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725; Queensborough Land Co. v. Cazeaux et al., 136 La. 724, 67 So. 641, L.R.A.1916B, 1201.
From the allegations of plaintiffs' petition and the recitals of the documents attached thereto, it can only be concluded that plaintiffs and defendant are residents, owners, and occupants of property of the Coleman Park Subdivision, Unit No. 2, of Bossier City, Louisiana; that the use of the whole of said subdivision is restricted by the covenants created and imposed by Coleman Development Company, Inc., the developer and subdivider thereof; and that the defendant is violating the restrictions thereby imposed by conducting and operating a commericial enterprise on Lot 119 of said subdivision contrary to the provision that no lot of said subdivision shall be used except for residential purposes. Accepting as true these allegations for the purpose of the trial of the exception of no cause of action, as we are required to do, the conclusion is inescapable that plaintiffs have stated a cause of action.
Therefore, the judgment appealed should be, and it is hereby, annulled, avoided, reversed and set aside; and
It is now ordered, adjudged and decreed that the exceptions of no cause and of no right of action be, and they are hereby, overruled; and, accordingly, this cause is remanded to the Honorable, the Twenty-Sixth Judicial District Court in and for Bossier Parish, Louisiana, for further proceedings in accordance with law and consistent with the views herein expressed.
The defendant-appellee is assessed with the cost of this appeal; all other costs are to await final determination of this cause.
Reversed and remanded.