# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-497


**NORRIS CLEMENT, ET AL.**

**VERSUS**

**BRENT J. MENARD, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20173639
HONORABLE DAVID MICHAEL SMITH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## CANDYCE G. PERRET
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, John E. Conery, D. Kent Savoie, and Candyce G. Perret, Judges.


**REVERSED; PERMANENT INJUNCTION IN FAVOR OF THE MENARDS IS GRANTED; CASE REMANDED FOR FURTHER PROCEEDINGS.**


**Pickett, J., dissents and assigns written reasons.**
**Conery, J., concurs and assigns written reasons.**
**Savoie, J., dissents and assigns written reasons.**

**G. Andrew Veazey**
**Bradford H. Felder**
**Dona K. Renegar**
**Veazey, Felder & Renegar**
**Post Office Box 80948**
**Lafayette, LA 70598-0948**
**(337) 234-5350**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Brent J. Menard**
    **Jamille Menard**

**Jade Roland Andrus**
**Andrus and Andrus, LLC**
**1227 Camellia Boulevard**
**Lafayette, LA 70508**
**(337) 988-2100**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Norris Clement**
    **Barbara Clement Richard,**
      **Agent & Attorney in Fact for Norris Clement**
    **Gregory Paul Dore**

**PERRET, Judge.**

This appeal stems from competing claims for injunctive relief involving an irrigation canal right-of-way. The trial court rendered judgment in favor of Norris Clement, Barbara Richard, authorized agent for Norris Clement, and Gregory Paul Dore ("the Clements"), and against Brent J. Menard and Jamille Menard ("the Menards").[1] The trial court concluded that the Clements have the right to maintain, operate, and repair the irrigation canal and permanently restrained, enjoined, and prohibited the Menards from interfering with the Clements' rights. The Menards appeal the judgment and, on appeal, we reverse the trial court's judgment, grant a permanent injunction in favor of the Menards, and remand the case to the trial court for further proceedings as may be necessary in conformity with this ruling.

**FACTS AND PROCEDURAL HISTORY:**

Most of the facts in this case do not appear to be in dispute. On September 20, 1952, Marcel Guidry, the Menards' ancestor in title, granted to Willie Clement, his heirs, and his assigns, a twenty-four-foot predial servitude/right-of-way for an irrigation canal across his property. The Clements are the heirs and assigns of Willie Clement, as evidenced by documents admitted into evidence. This agreement ("the 1952 Agreement") was recorded in the Lafayette Parish records under Entry number 280984. In the 1952 Agreement, Mr. Guidry recognized that:

> [T]here is an irrigation canal running along the Southern boundary of his said land and lying next to the Public Road, which irrigation canal leads from the irrigation plant which Sidney Constantin sold to Willie Clement on September 19, 1952, . . . to the tract of land consisting of approximately 120 acres, . . . which Sidney Constantin sold to Willie Clement on September 19, 1952.

---

[1] The Menards are the trustees of The Menard Family Revocable Living Trust, which has naked ownership of the property on which the irrigation canal crosses.

The 1952 Agreement further states that Mr. Guidry grants Willie Clement the right-of-way because Mr. Guidry had never granted the former owners of the irrigation plant the right-of-way described. More specifically, the 1952 Agreement states that Mr. Guidry:

> [D]oes now grant, sell and deliver unto Willie Clement . . . his heirs and assigns, a right-of-way 24 feet in width for the said irrigation canal, said right-of-way to continue for as long a time as the said irrigation well and pumping plant is operated by either the said Willie Clement, his heirs or assigns.
>
> The said Willie Clement binds and obligates himself, his heirs and assigns, to take good and proper care of the canal levies and not permit any water to escape or cause any damage to the growing crops on land of Marcel Guidry, his heirs or assigns.

In 1997 the Clements installed a twelve-inch plastic pipe in the same location as the open irrigation canal and filled the open canal.

On September 22, 1998, the Menards purchased the subject property including that property on which the right-of-way was formerly granted. The Act of Cash Sale of Property transfers the described property to the Menards "with full and general warranty of title, and with full subrogation to all the rights of warranty and all other rights as held herein by said Sellers, subject to any easements, rights-of-way and restrictions of record." The act of sale did not disclose the presence of any underground pipeline on the Menard property.

Subsequently, the irrigation pipeline required repairs. After the Menards allegedly prevented those repairs from occurring, the Clements filed a Petition for Temporary Restraining Order, and Preliminary Injunction. The Clements asserted ownership of an irrigation canal right-of-way on the Menards' property which was, and is still, used to irrigate rice crops and crawfish ponds. The petition further alleged that Gregory Dore leases the Clement property for rice crops and that the

2

irrigation canal supplies the property with water. The Clements asserted they attempted to repair a leak in the irrigation pipe but were prevented from doing so by Brent Menard. Therefore, the Clements sought a temporary restraining order preventing the Menards from interfering with the Clements' maintenance of the irrigation pipe.

On June 22, 2017, the trial court signed and granted the Clements' temporary restraining order for ten days. The Menards sought to have the temporary restraining order deemed expired, and a show cause hearing was set for July 31, 2017. In opposition to the restraining order, the Menards alleged that the irrigation canal was abandoned in 1997, when the open irrigation canal was replaced with an underground irrigation system. The Menards further assert that a survey done on July 31, 1997, does not indicate the presence of the pipeline on the Menard property. The Menards allege that their act of sale does not acknowledge the pipeline and the only attachment to the act of sale was the 1997 survey.

On July 31, 2017, the Menards filed an Answer, Reconventional Demand & Third-Party Petition for Possession and for Damages alleging that the Clements cannot meet the requirements for obtaining injunctive relief, that there is no recorded instrument establishing the Clements' right to operate an underground pipeline on the Menard property, and that the Menards were entitled to rely upon the absence of any instrument in the public records. Furthermore, the Menards sought injunctive relief to protect their possession of their property and ensure the removal of the irrigation pipeline, an order requiring the Clements to assert any adverse claims of ownership in a petitory action, and damages from the disturbance of their possession, negligence, nuisance, and wrongful issuance of a temporary restraining order.

3

The Clements responded to the Menards' reconventional demand with their own demand for damages allegedly caused by the Menards' excavation of the irrigation pipeline area.

At the trial on the competing temporary restraining orders and permanent injunctions, Gregory Dore, Barbara Richard, and Ronald Richard testified regarding the use of the irrigation system before and after 1997, as well as the impact on farming operations that occurred when the irrigation system was not operational. The parties introduced exhibits including the 1952 Agreement and the Menard act of sale documents. The trial court ruled in favor of the Clements, documenting its factual findings in its Findings of Fact and Reasons for Judgment in addition to the court's Judgment Granting Final Injunction.

It is from this judgment that the Menards appeal, asserting three assignments of error:

> A. The trial court's ruling ignores and undermines the public records doctrine because it deprived the Menards of their right to rely on the absence from the public records of an instrument granting title for the Clement Interests to operate a non-apparent underground predial servitude.

> B. The trial court erroneously conflated the grant of title of an apparent predial servitude for an irrigation canal as encompassing a non-apparent predial servitude for an underground pipeline.

> C. Alternatively, the 1952 Agreement is ambiguous as to whether it grants title to operate a non-apparent predial servitude[,] and the trial court failed to recognize that any ambiguities regarding title must be resolved in favor of the Menards as owners of the servient estate.

**DISCUSSION:**

"Predial servitudes are either apparent or nonapparent. Apparent servitudes are those that are perceivable by exterior signs, works, or constructions . . . . Nonapparent servitudes are those that have no exterior sign of their existence[.]"

4

La.Civ.Code art. 707. Apparent predial servitudes may be established in three ways, including by title, but non-apparent servitudes may only be acquired by title. La.Civ.Code arts. 739 and 740. Additionally, to be effective as to third parties, the instrument establishing "a real right in or over an immovable" must be recorded. La.Civ.Code art. 3338.

The 1952 Agreement, establishing the right-of-way, was recorded in the Lafayette Parish conveyance records, and, therefore, the right established in that instrument is effective against the Menards.[2]

When established by title, "[t]he use and extent of such servitudes are regulated by the title by which they are created[.]" La.Civ.Code art. 697. Therefore, the crux of the issue on appeal is whether the 1952 Agreement for an "irrigation canal" right-of-way encompasses an underground irrigation pipeline,[3] which is addressed in Appellants' Assignment of Error Number Two.

"Whether a servitude has been used according to the title or possession, or whether the condition of the servient estate has been aggravated, is a question of fact." A.N. YIANNOPOULOS, PREDIAL SERVITUDES §7:5 (4 Louisiana Civil Law Treatise 2018). "Courts resolve this question according to the circumstances by taking into account the situation of the estates, the agreement of the parties, the needs of the dominant estate at the time of the creation of the servitude, and the

---

[2] While the Menards argue in their first assignment of error that the right-of-way was not in the 1997 survey or their act of sale document, that is of no moment in this case. "The servitude need not appear in the act by which the present owner acquired the servient estate nor in his chain of title." A.N. YIANNOPOULOS, PREDIAL SERVITUDES §6:23 (4 Louisiana Civil Law Treatise 2018) . "[R]eal obligations accompany the land in the hands of subsequent vendees without any mention thereof in the acts of transfer." *Clark v. Reed*, 122 So.2d 344, 349 (La.App 2 Cir. 1960). Additionally, the act of sale document specifically states it is "subject to any easements, rights-of-way and restrictions of record."

[3] This case is resolved by addressing the Menards' Assignment of Error Number Two: whether, the trial court erroneously conflated the grant of title of an apparent predial servitude for an irrigation canal as encompassing a non-apparent predial servitude for an underground pipeline.

5

prejudice sustained by the owner of the servient estate." *Id.* *See also Sigue v. Texas Gas Transmission Corp.*, 154 So.2d 800 (La.App. 3 Cir.), *writ refused*, 244 La. 1025 (La.1963), *cert denied*, 379 U.S. 922, 85 S.Ct. 277 (1964), in which this court applied contract interpretation codal articles to determine that a contract providing a right-of-way only provided for buried pipelines. Additionally, "[d]oubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." La.Civ.Code art. 730.

> [T]he intention of the parties to place a charge on one estate for the benefit of another estate, and the extent of the charge, must be expressed on the face of the title document and cannot be inferred or implied from vague or ambiguous language. The title document must also reasonably identify the dominant estate *and* the servient estate.

*S. Amusement Co., Inc. v. Pat's of Henderson Seafood & Steak, Inc.*, 03-767, p. 7 (La.App. 3 Cir. 3/31/04), 871 So.2d 630, 634 (quoting *Mardis v. Brantley*, 30,773, pp. 2-3 (La.App. 2 Cir. 8/25/98), 717 So.2d 702, 704, *writ denied*, 98-2488 (La. 11/20/98), 729 So.2d 563).

In this case, the 1952 Agreement sets forth the intention to place a charge on Mr. Guidry's estate for the benefit of Willie Clement's estate by granting a twenty-four-foot right-of-way for an irrigation canal. The extent of the charge is described as "a right-of-way 24 feet in width for the said irrigation canal" which was earlier described as "an irrigation canal running along the Southern boundary of his [Mr. Guidry's] said land and lying next to the Public Road, which irrigation canal leads from the irrigation plant . . . to the tract of land consisting of approximately 120 acres[.]" The 1952 Agreement further requires Willie Clement, his heirs and assigns, "to take good and proper care of the canal levies and not permit any water to escape or cause any damage to the growing crops on [the] land of Marcel Guidry, his heirs or assigns."

6

The Menards argue that the 1952 Agreement only establishes a right-of-way for an apparent servitude, an irrigation canal as was in existence at the time that the 1952 Agreement was signed, and that the "nature" of the servitude has been changed to a non-apparent servitude, a buried irrigation pipeline.

The Clements argue that the current underground pipeline is merely a permissible modification of the original, apparent servitude and, thus, encompassed by the 1952 Agreement as it serves the same purpose, irrigation.

The Clements further argue that the buried irrigation pipeline is less onerous, as it is underground and does not present all the hazards and unpleasant effects of an open canal. Overlooked by the Clements is the obvious problem of having to go onto the lands of the servient estate to dig up and repair the pipeline should it become clogged or inoperable, the very issue that brought the existence of the pipeline to the attention of the Menards in this case. In determining whether the "nature" of the servitude has changed, we have considered the Louisiana Civil Law Treatise on the subject, which provides:

> The owner of the dominant estate may not unilaterally change *the nature of* a servitude, its location, or its purpose. For example, he may not transform a discontinuous servitude into a continuous servitude; he may not relocate the servitude without the consent of the owner of the servient estate; and he may not convert a servitude of passage for the construction of a highway into a servitude for recreational purposes, a railroad right of way into a servitude for the operation of a cotton gin, or an under-the-ground pipe line servitude into a servitude for the maintenance of above-ground facilities. In such cases, the owner of the dominant estate is not using the servitude within the limits of his title or possession, but is attempting to establish a new servitude or to modify the servitude by unilateral action. He may be liable, therefore, to the owner of the servient estate for damages for aggravation of the condition of the servient estate, or even if the condition of the servient estate has not been aggravated.

A.N. YIANNOPOULOS, PREDIAL SERVITUDES §7:6 (4 Louisiana Civil Law Treatise 2018)(footnotes omitted)(emphasis added).

The trial court concluded that although the underground pipeline was "changed from an open ditch to a subsurface pipe in 1997[,]" "the right of way for the irrigation canal has been maintained and consistently used for irrigation for agricultural crops for many years. The subsurface pipe has been utilized for that, and no other, since 1997." Additionally, the testimony of the Clements was that the pipe was in the same location as the prior apparent canal. Furthermore, the trial court concluded that the term "irrigation canal," as used in the 1952 Agreement, encompasses a subsurface pipe for agricultural irrigation in this case.

We disagree with the trial court's conclusion. The 1952 Agreement describes an apparent servitude, which is emphasized by the requirement that Willie Clement maintain the canal levies. Additionally, although the new underground pipe is in the same location and serving the same purpose as the prior canal, the nature of the servitude has been unilaterally changed by the Clements. Thus, when the Clements filled in the apparent servitude in 1997, they ceased to use the servitude granted to them by the language in the 1952 Agreement. Considering that any "[d]oubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate," we find the trial court was manifestly erroneous. La.Civ.Code art. 730.

**CONCLUSION:**

The trial court's judgment in favor of the Clements is reversed. A permanent injunction in favor of Appellants, the Menards, is granted and the case is remanded to the trial court for further proceedings as may be necessary in conformity with this ruling. Costs of this appeal are assessed to Appellees, the Clements: Norris Clement, Barbara Clement Richard, and Gregory Paul Dore.

**REVERSED; PERMANENT INJUNCTION IN FAVOR OF THE MENARDS IS GRANTED; CASE REMANDED FOR FURTHER PROCEEDINGS.**

NORRIS CLEMENT, ET AL.

VERSUS

BRENT J. MENARD, ET AL

**Pickett, J., dissenting with written reasons.**

I respectfully dissent.

In 1952, the plaintiffs' ancestor was granted the right to operate and maintain an irrigation canal situated on the defendants' property by the defendants' ancestor in title. The act establishing the servitude was recorded in the public records. In 1997, the plaintiffs installed plastic pipe to transport the irrigation waters and covered the pipe. They have continued to transport irrigation water via this underground pipe without interruption for twenty-two years since installing the pipe. The defendants purchased the property on which the irrigation canal is situated *after* the plaintiffs installed the plastic pipe and filled the canal. The act of sale transferring title to the defendants does not mention the irrigation canal/pipeline but provides that the sale is made "subject to any easements, rights-of-way and restrictions of record." The servitude at issue clearly was "of record." The plaintiffs filed suit in 2017 seeking an injunction allowing them on the defendants' property, alleging that the defendants refused to allow them to repair a leak on a section of the underground pipe located in the servitude. The trial court found that the plaintiffs were entitled to a permanent injunction "restraining, enjoining and prohibiting [the defendants] from harassing or threatening them and from interfering with the operation, maintenance and repair of the irrigation canal" as described in the 1952 act granting the servitude.

The defendants argue that the right of way granted by their ancestor-in-title was an apparent servitude and that the plaintiffs changed the nature of the servitude to a non-apparent servitude when they installed plastic pipe where the irrigation canal was situated and filled the canal. They maintain that the public records do not reflect that the servitude granted is a non-apparent servitude as required by La.Civ.Code art. 739; therefore, the trial court erred in granting judgment in favor of the plaintiffs.

As noted by the majority, the 1952 act granting the right-of-way at issue provides that Marcel Guidry sold to "Willie Clement, . . ., his heirs and assigns a right of way 24 feet in width for the said irrigation canal, said right-of-way to continue for as long a time as the said irrigation well and pumping plant is operated by either the said Willie Clement, his heirs or assigns." The act further set forth the specific location of the canal on Mr. Guidry's property and obligated Mr. Clement "to take good and proper care of the canal levies and not permit any water to escape or cause any damage to growing crops on land of Marcel Guidry, his heirs or assigns."

The majority cites Professor Yiannopoulos' discussion of the limitations of the dominant estate owner's rights with regard to *changing the nature of a servitude, its location or its purpose.* Professor Yiannopoulos' examples of unacceptable changes by a dominant estate owner include changing a non-continuous servitude to a continuous servitude, complete relocation of a servitude on the servient estate, changing a railroad right-of-way to a servitude to operate a cotton gin, and conversion of an underground pipe line servitude to an above ground facility. While at first glance the last example might appear to support the defendants' claim, it does not. The installation of an above ground facility limits the servient estate owner's use of his property thereby making the pipe line servitude more onerous on the

servient estate. In each of these instances, the changes made by the dominant estate caused the servitude to be more onerous. In the instant case, the installation of an underground pipe in the same location of an irrigation canal made the servitude less onerous. Neither the nature nor the purpose of the servitude was changed. The installation of the underground pipe actually improved the system for which the servitude was established by eradicating the need for mosquito and rodent control, as well as other maintenance issues that accompany an open canal.

The majority also finds that the 1952 Agreement describes only an apparent servitude because the agreement required Mr. Clement, and now the plaintiffs, to maintain the canal levies. However, the agreement makes it clear that the purpose of maintaining the levies is to "not permit any water to escape or cause any damage to the growing crops or land" of Mr. Guidry. The plaintiffs remain bound by that requirement such that they must maintain their irrigation pipe to insure that no water escapes or causes damage to the defendants' property.

In my view, the plaintiffs' conversion of the irrigation canal to an irrigation pipe does not change the nature of the original servitude granted by Mr. Guidry—its nature remains that of an irrigation canal. Nor does it change the location or purpose of the servitude. Additionally, the change made the servitude less burdensome on the servient estate.

The plaintiffs complied with La.Civ.Code art. 739's requirement that non-apparent servitudes be recorded and thereby protected the existence of their servitude. The act establishing the servitude does not define or limit the irrigation canal to being an apparent servitude; however, it does specifically define the location and existence of a right of way for an irrigation canal.

I would affirm the judgment of the trial court.

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-497

NORRIS CLEMENT, ET AL.

VERSUS

BRENT J. MENARD, ET AL.

CONERY, J., concurs and assigns reasons.

I join in the majority opinion, but write separately as, in my opinion, consideration of the issue presented must begin with discussion of La.Civ.Code arts. 729 and 730. It is the application of that framework that reveals the error in the trial court's ruling.

Louisiana Civil Code Article 729 provides: "Legal and natural servitudes must be altered by agreement of the parties if the public interest is not affected adversely." There is no indication that an agreement between the Menards and the Clements, verbal or otherwise, altered the initial servitude. It is instead apparent that the parties' dispute stems from the original, 1952 Agreement which called for an "irrigation canal." The Clements now wish to expand the scope and meaning of "irrigation canal" as used in that document to include operation of a replacement underground irrigation pipeline which they undisputedly installed without the knowledge or permission of the Menards. Indeed, the survey of the property purchased by the Menards does not show that there is an underground irrigation pipeline across their property, and because the pipeline is buried, there is no indication of its existence on the surface of the property.

In the face of such dispute, La.Civ.Code art. 730 dictates that: "Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved

in favor of the servient estate." Article 730's foundational nature is apparent in its comment, which describes this concept as the "cardinal rule of interpretation[,]" and indicates that "instruments purporting to establish predial servitudes are always interpreted in favor of the owner of the property to be affected." La.Civ.Code art. 730 cmt. (b). The comment further references longstanding supreme court jurisprudence explaining that "'servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law.'" *Id.* (quoting *Parish v. Municipality No. 2*, 8 La.Ann. 145, 1853 WL 4186 (La.1853), cited with approval in *Buras Ice Factory, Inc. v. Dep't of Highways*, 235 La. 158, 103 So.2d 74 (1958))(also citing *McGuffy v. Weil*, 240 La. 758, 125 So.2d 154 (1960)). *See Palomeque v. Prudhomme*, 95-0725 (La. 11/27/95), 664 So.2d 88; *Ryan v. Monet*, 95-1332 (La.App. 4 Cir. 12/28/95), 666 So.2d 711. *See also* A.N. YIANNOPOULOS, PREDIAL SERVITUDES § 6.25 (4 La. Civ. L. Treatise 2018).

It is unquestioned here that the parties' competing claims arise out of the change in the nature of servitude from "apparent" to "non-apparent" and the manner of exercise of the predial servitude contained within the 1952 Agreement. By reference to La.Civ.Code art. 730, on this latter point, resolution favors the Menards.

In *Southern Amusement Co., Inc., v. Pat's of Henderson Seafood & Steak*, 03-767 (La.App. 3 Cir. 3/31/04), 871 So.2d 630, this court recognized Article 730's directive as well as the underlying principle that the intention of parties to place a charge on the servient estate, as well as the extent of that charge, must be expressed on the face of the title document creating the purported predial servitude. Reviewing the matter before it, the panel found "ambiguity in the attempted establishment of a predial servitude" contested between the parties and found, therefore, "that the issue must be resolved in favor of [the servient estate.]" *Id.* at 635. The same type of

2

analysis is applicable in this case as the parties dispute the meaning of "irrigation canal."

The trial judge's well intentioned efforts to resort to equity to "expand" the meaning of irrigation canal to encompass a buried "irrigation pipeline" is legally incorrect, and as such, we owe no deference to his decision and must decide the case *de novo*. *See Chambers v. Village of Moreauville*, 11-898 (La. 1/24/12), 85 So.3d 593. In *Dautreuil v. Degeyter*, 436 So.2d 164, 168 (La.App. 3 Cir. 1983), a panel of this court rejected such an equitable remedy, instead finding it appropriate to construe the servitude at issue by the terms of its originating agreement. It determined that the servitude's contractual nature controlled and explained that "[w]hen a servitude of passage is created by contract, that contract regulates the extent of the servitude" pursuant to La.Civ.Code art. 697, "keeping in mind that servitudes are limitations on ownership and, as such, are not favored in law; thus, any doubt as to the existence, extent or manner of exercise of a predial servitude is to be resolved in favor of the servient estate, [La.Civ.Code] art. 730."

Similarly, in *Dickson v. Arkansas Louisiana Gas Co.*, 193 So. 246, 247 (La.App. 2 Cir. 1939), the second circuit looked to the language of the instrument establishing a servitude in which the dominant estate was granted a right-of-way for the laying of "a gas main for the distribution of natural or artificial gas" through the servient estate. The court rejected the argument that the subject language encompassed a right to dig "an entirely new ditch, separate and independent of the old one" in order to lay a new main. It instead noted that the servitude referenced the use of land for "a gas main," not "two or more mains," and it did not permit the use of "double the quantity of land for two mains than was required for one." *Id.* at 248-49. While recognizing that the width of the right-of-way was not specified in

3

the instrument, it found that "[t]he width necessary to make an excavation adequate to receive the main originally, determined the limits of the grantee's right in that respect, under said instrument." *Id.* In doing so, the second circuit returned to a contractual analysis, explaining that "[i]nstruments of the character of that before us are strictly construed because rights which would not otherwise have existence are thereby created. Little or nothing should be inferred in construing or enforcing them[.]" *Id.* at 249.

In this case, the 1952 Agreement permitted a right-of-way for an "irrigation canal." To the extent that term now seems to be ambiguous in terms of the respective parties' interpretation of that term, it is clear by the instruction of Civil Code Article 730 and by reference to jurisprudence such as *Southern Amusement*, 871 So.2d 630, that the trial court was required to resolve ambiguity in favor of the servient estate, the Menards.

Accordingly, I join in the majority's finding in favor of the Menards and agree to the disposition outlined in the majority's decree.

**NORRIS CLEMENT, ET AL.**

**VERSUS**

**BRENT J. MENARD, ET AL.**

**Savoie, J. dissenting with written reasons**.

I respectfully dissent for the reasons assigned by Judge Pickett, as well as for the following reasons. In my view, the purpose of the servitude, as made clear by the 1952 act granting the servitude, was to allow for the passage of water for irrigation purposes. The 1952 act, as written, encompasses both an apparent and a nonapparent servitude for that purpose. Therefore, I would affirm the trial court's judgment.